NO. 07-06-0420-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 14, 2008

_____

DAVID DESCHENES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 6804; HONORABLE LEE WATERS, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, David Deschenes, was convicted by a jury of money laundering in violation of § 34.02(a)(1) of the Texas Penal Code and sentenced to ten years confinement, suspended for ten years, and a $10,000 fine. Appellant contends: (1) the evidence at trial was legally insufficient to support his conviction; (2) the evidence at trial was factually insufficient to support his conviction; and (3) the trial court erred in denying

his motion to suppress evidence. We reverse his conviction and render judgment of acquittal.

## **Background**

**I. Appellant's Arrest**

On January 22, 2002, DPS Trooper Oscar Esqueda stopped Appellant for speeding on Interstate 40 in Gray County. Esqueda approached Appellant's car on the passenger side to avoid passing traffic, and Appellant opened the passenger car door to speak with him. Esqueda observed empty beverage containers and fast food wrappers strewn on the car's floorboard. After Appellant produced his driver's license, Esqueda informed him that he was speeding, asked him to get out of the vehicle, and sit in his patrol car.

In the patrol car, Esqueda continued to ask Appellant questions. Appellant told him that his car had been rented by his father and that he was traveling from Connecticut to San Diego to visit an uncle living on a naval base. Esqueda named several naval bases in the San Diego area and Appellant was unsure of the specific base where his uncle lived. Esqueda became suspicious because Appellant appeared defensive, nervous, and unsure of the exact location of his ultimate destination. He was also suspicious because Appellant was traveling east on I-40, a route used by drug smugglers to move drugs from the west coast to the east coast and cash from the east coast to the west coast. In his experience,

smugglers typically did not know exactly where they were going and it appeared Appellant was driving straight through because the car's interior had a "lived-in" look.

Esqueda then asked Appellant whether he had any weapons in his car, grenades, or narcotics such as marihuana or cocaine. Appellant looked at his car and answered in the negative. Esqueda's suspicions were further heightened when Appellant looked at his car when he answered rather than maintaining eye contact. Esqueda also asked whether Appellant was carrying any large sums of money. Appellant indicated he was not and responded he had eighty dollars and several credit cards on his person and intended to fund his trip using a debit card. Esqueda observed Appellant's nervous behavior appeared to increase as the traffic stop progressed. He further testified that the typical motoring public became less nervous as a stop progressed and things were explained to them. In his opinion, a person involved in some type of criminal activity remains nervous, or becomes more so, the longer there is contact.

Esqueda issued a warning to Appellant. While Appellant was signing the warning, Esqueda asked Appellant if he could search his car and Appellant consented. During the search, Esqueda again observed that Appellant's nervousness escalated. Esqueda found nothing in the passenger side of the vehicle or passenger compartment and found no evidence of drugs or contraband in the car. Esqueda then took the keys from the ignition and went back to search the trunk.

3

In the trunk, Esqueda observed three pieces of luggage–a large, tan suitcase, a medium, black suitcase, and a small carry bag. Esqueda asked Appellant to show him the bags' contents. Appellant showed Esqueda some clothing in the medium bag. Esqueda then asked Appellant to show him what was in the small carry bag. He believed Appellant was apprehensive about opening the remaining bags. Appellant opened the carry bag and showed Esqueda some hygiene articles and underwear; however, from Esqueda's perspective, he believed Appellant appeared to be ignoring a blue plastic sack inside the bag.

Esqueda pressed down on the carry bag and felt something hard inside. Appellant then looked up at Esqueda and said, "Okay, I lied." Esqueda looked in the sack and found five bundles of cash held together by rubber bands. When he inquired how much money was in the bag, Appellant responded $17,500.[1] Esqueda testified that, in his experience, people smuggling or transporting illegal proceeds often bundled the money with rubber bands and placed it in plastic bags.

Esqueda then searched the medium bag and found a set of scales. Appellant indicated he used the scales to "weigh stuff." The large, tan bag was empty. Appellant stated he owned the money and had brought it with him because he was thinking of going to Las Vegas. He told Esqueda that he had worked for the money.

---

[1]The testimony at trial showed the actual amount to be $17,620.

Esqueda suspected Appellant was transporting scales to measure drugs and intended to use the empty suitcase to store drugs. Based upon his observations, Esqueda believed the cash represented proceeds from illegal transactions. He accompanied Appellant to his patrol car and called for a canine officer. When Esqueda asked Appellant why he lied about the money being in his vehicle, Appellant responded he was nervous telling anyone he had a large amount of cash in his car because, when he was young, he had problems with the police taking his money.

When DPS Trooper Tony Rocha arrived with DPS Canine Storm, Esqueda asked him to run Appellant's car. Storm was trained to detect an odor of marihuana, methamphetamine, cocaine, and heroin. Storm did not alert to the interior or exterior of Appellant's car. Rocha put Storm in the trunk and he alerted to the small carry bag containing the currency and the large empty suitcase. Esqueda then arrested Appellant for money laundering, seized the $17,620, and deposited the money in a bank.

## II. Indictment

Two and a half years later, in July 2004, Appellant was indicted by a Gray County Grand Jury for money laundering. The indictment provided as follows:

> [U]pon their oaths present in and to said Court at said term that DAVID JAMES DESCHENES hereinafter styled Defendant, on or about the 11th day of January, 2002, and before the presentment of this indictment, in the County and State aforesaid, did then and there knowingly possess, conceal, and transport the proceeds of criminal activity, to-wit: United States

5

currency, and the value of the said funds was $3,000.00 or more but less than $20,000.00, against the peace and dignity of the State.

The Texas Penal Code defines "criminal activity" as any offense, including any preparatory offense, that is classified as a felony under the laws of this State or the United States, or that is punishable by confinement for more than one year under the laws of another state. Tex. Penal Code Ann. § 34.01(1) (Vernon 2003). "Proceeds" are defined as "funds acquired or derived directly or indirectly from, produced through, or realized through an act." § 34.01(4).

The Grand Jury failed to specify in the indictment and the State failed to identify at trial the offense that constituted the statutory element of criminal activity relied upon by the State to meet its burden of proof. Per the statutory definition, it is clear that the term "criminal activity" could comprise any one of hundreds of felony offenses, state or federal.

While the State maintains that it is under no obligation to specify in the indictment the criminal activity from which the "proceeds" originated, it fails to cite any authority for this proposition. While we agree that the indictment invoked the jurisdiction of the trial court, *Teal v. State,* 230 S.W.3d 172, 180 (Tex.Crim.App. 2007); *Duron v. State,* 956 S.W.2d 547, 550-51 (Tex.Crim.App. 1997), we find the indictment was defective.

Generally, an indictment which tracks the statutory language defining an offense will provide adequate notice to the accused of the nature of the charges against him. *Curry v. State,* 30 S.W.3d 394, 398 (Tex.Crim.App. 2000); *Mays v. State,* 967 S.W.2d 404, 406

6

(Tex.Crim.App. 1998). An indictment need not set forth facts which are "merely evidentiary in nature." *Mays,* 967 S.W.2d at 406. However, in the face of a motion to quash, an indictment must provide more specific allegations "if the prohibited conduct is statutorily defined to include more than one manner or means of commission." *Saathoff v. State,* 891 S.W.2d 264, 266 (Tex.Crim.App. 1994). The statutory definition of "criminal activity" includes a myriad of manner or means of commission. Therefore, an indictment alleging the offense of money laundering should specify the offense which the State contends to be the relevant "criminal activity" and failure to do so renders the indictment defective.

That said, if a defendant does not object to a defect, error, or irregularity of form or substance in an indictment before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal. Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005). In this case, Appellant never sought to require the State to specify the exact "criminal activity" it was relying upon to prove the allegations in the indictment. Therefore, Appellant's complaints on appeal will be analyzed based upon the indictment as drafted.

## III. Trial

On September 18 and 19, 2006, Appellant was tried by a jury. At trial, the State neither proffered nor argued any specific theory pertaining to the element of criminal activity. Rather, in its opening and closing statements, the State argued only that Appellant

7

was involved in "criminal activity." Although the State's principal witness, Esqueda, made several indirect references to "drug trafficking" and "drug smuggling" while describing generally the activities of persons involved in such illegal ventures, he expressed no opinion connecting Appellant and the money to any identified felony. In fact, Esqueda testified he had no personal knowledge where Appellant's money originated.

In presenting to the jury the applicable law and relevant definitions, the trial court charged the jury as follows:

> The Defendant, DAVID JAMES DESCHENES, stands charged by indictment with the offense of MONEY LAUNDERING, . . . . A person commits the offense if the person knowingly possesses, conceals and transports the proceeds of criminal activity and the value of the funds is $3,000 or more but less than $20,000. Unless you so find by a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict "Not Guilty."
>
> "Criminal activity" means any offense, including any preparatory offense, that is classified as a felony under the laws of this State or the United States or punishable by confinement for more than one year under the laws of another state.
>
> "Funds" include coin or paper money of the United States.
>
> "Proceeds" means funds acquired or derived directly or indirectly from, produced through, or realized through an act.

Neither the indictment, jury instructions, nor the State's arguments ever identified the "offense" or "felony" that constituted the "criminal activity" from which the $17,620 was "acquired or derived directly or indirectly from, produced through, or realized."

8

## Discussion

### I. Appellant's Contentions

Appellant contends the State's evidence at trial was legally insufficient to prove money laundering because the State failed to prove that the money found in Appellant's car was proceeds from any criminal activity. Appellant also asserts the State failed to identify and prove the criminal activity from which the money was acquired or derived. Alternatively, Appellant asserts the evidence is factually insufficient to support his conviction.[2] Finally, Appellant contends the trial court erred in its denial of his motion to suppress all evidence obtained after the warrant check was run on him and Esqueda issued a traffic warning because Esqueda had no reasonable suspicion to continue his detention after the traffic warning was issued.

### II. Legal Sufficiency - Standard of Review

In assessing the legal sufficiency of the evidence, we must consider all the record evidence in the light most favorable to the prosecution and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt.

---

[2] When both legal and factual sufficiency are challenged, we must first determine whether the evidence is legally sufficient to support the judgment. *Campbell v. State,* 139 S.W.3d 676, 683 (Tex.App.–Amarillo 2003, no pet.). A legal sufficiency challenge, if sustained, results in an acquittal rather than a retrial and, therefore, pretermits any remaining issues. *State v. Mercier,* 164 S.W.3d 799, 812 (Tex.App.–Corpus Christi 2005, no pet.).

*See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). In carrying out this task, we remain cognizant that "proof beyond a reasonable doubt" means proof to a high degree of certainty; *Lane v. State,* 151 S.W.3d 188, 191 (Tex.Crim.App. 2004), and if, based on all the evidence, a reasonably-minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse the conviction and order a judgment of acquittal. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003), *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). In effect, a claim of legal insufficiency is an argument that the case never should have been presented to the jury. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000), *cert. denied,* 532 U.S. 944, 121 S.Ct. 1407, 149 L.E.2d 349 (2001).

In conducting a legal sufficiency review, we do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). Instead, we determine whether the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v.* State, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). In our examination, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and the standard of review of appeal is the same for both direct and circumstantial evidence cases. *Guevara v. State,*

152 S.W.3d 45, 49 (Tex.Crim.App. 2004). Any inconsistencies in the evidence are also resolved in favor of the adjudication. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

We measure the sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge would be one which "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

## III.  Hypothetically Correct Jury Charge

In fashioning our hypothetically correct jury charge, we are bound by the law "as authorized by the indictment." That is to say, Appellant's hypothetically correct jury charge would simply quote the language of the indictment, instructing the jury to find Appellant guilty if it found that the money was proceeds of "criminal activity." *See Curry,* 30 S.W.3d at 404. Just as we cannot substitute ourselves for the Grand Jury and re-write the indictment, we cannot search the statutes, state and federal, to find a felony to fit the State's evidence or the jury's verdict. Here, where the indictment and the jury instructions merely parrot the statute and Appellant did not seek to compel the State to specify the specific criminal activity, we are bound by the language contained in the indictment in conducting our sufficiency analysis. *Fisher v. State,* 887 S.W.2d 49, 57 (Tex.Crim.App.

11

1994).  Therefore, the essential elements of the offense of money laundering, pursuant to § 34.02(a)(1) of the Texas Penal Code, under our hypothetically correct jury charge as authorized by the indictment in this case, are met when a person: (1) knowingly; (2) acquires or maintains an interest in, receives, conceals, possesses, transfers, or transports; (3) the proceeds; (4) of criminal activity.  Tex. Penal Code Ann. § 34.02 (Vernon Supp. 2007)

## IV.  Proceeds of Criminal Activity

Appellant contends the State failed to offer any evidence that the $17,620 represented "proceeds" of any "criminal activity."  As stated above, for purposes of a money laundering prosecution, proceeds are statutorily defined as funds acquired or derived directly or indirectly from, produced through, or realized through some criminal activity.  § 34.01(4).

On appeal, for the first time, the State argues evidence was presented to the jury from which they were entitled to conclude that Appellant's money came from "sales and trafficking in narcotics."   Although the State did not argue this theory at trial, it contends the collective impact of the entire body of evidence legally supports this conclusion.

While not directly addressing the question of whether the money was derived from criminal activity, the State contends that civil asset-forfeiture cases under Chapter 59 of

the Texas Code of Criminal Procedure are persuasive.[3] *See* Tex. Code Crim. Proc. Ann. arts. 59.01, 59.02 (Vernon 2006). While asset-forfeiture cases can be argued to support a legal sufficiency finding that money seized was "used or intended to be used" in the commission of a felony under the civil preponderance of the evidence standard,[4] they are of limited precedential value when analyzing a legal sufficiency finding that money was proceeds derived from criminal activity under the beyond a reasonable doubt standard. If anything, cases finding a lack of legal sufficiency under the reduced civil standard are persuasive of finding a lack of legal sufficiency under the higher criminal standard.[5]

---

[3]Federal forfeiture cases may also be instructive because, like their state law counterparts, a link must be proven between the forfeited property and illegal activity. *See United States v. $252,300.00 in U.S. Currency,* 484 F.3d 1271, 1274 n.2 (10th Cir. 2007). Although the enactment of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) increased the federal government's burden to establish such a link to something more than probable cause, federal courts still find the pre-CAFRA cases relevant because "factors that weighed in favor of forfeiture in the past continue to do so now–with the obvious *cavaet* that the government must show more or stronger evidence establishing a link between forfeited property and illegal activity." *Id.*

[4]Forfeiture proceedings are civil in nature, not criminal. *One 1995 Dodge Pickup, Bearing Texas License Plate #2NJ-TM, V.I.N. 1B7HC16Y9SS379939,* 119 S.W.3d 306, 307 (Tex.App.–Waco 2003, no pet.). As such, the State need only prove by a preponderance of the evidence that probable cause exists to seize the property. *Hardy v. State,* 102 S.W.3d 123, 129 (Tex. 2003). Probable cause is a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. *Id.* For any felony committed under the Texas Controlled Substances Act (Chapter 481, Health and Safety Code) property subject to forfeiture includes not only property *used,* but property *intended to be used* in the commission of that offense. Art. 59.01(B)(I), Tex. Code Crim. Proc. Ann. (Vernon 2006).

[5]*See, e.g., $56,700 in U.S. Currency v. State,* 730 S.W.2d 659 (Tex. 1987); *$7,058.84 in U.S. Currency v. State,* 30 S.W.3d 580 (Tex.App.–Texarkana 2000, no pet.); *$80,631.00 v. State,* 861 S.W.2d 10 (Tex.App.–Houston 1993, writ denied).

13

The State contends that its best single piece of evidence that Appellant's money was proceeds of some criminal activity was Esqueda's "expert" testimony that "[a] lot of the proceeds from the drugs that are shipped to the east come back westbound to either the originator who sent the drugs or someone that's going to purchase narcotics or weapons or whatever the contraband may be." For this speculative statement to have any probative value there must be some connection between the money and the trafficking of drugs. Proof that amounts to only a strong suspicion or mere probability of guilt is insufficient to sustain a conviction. *Allen v. State,* ___ S.W.3d ___, No. 03-04-00557-CR, 2008 WL 615431, at *18 (Tex.App.–Austin March 7, 2008, no pet h.). If circumstantial evidence provides no more than a suspicion, the jury is not permitted to reach a speculative conclusion. *Id*. A jury may not reasonably infer an ultimate fact from meager circumstantial evidence, none more probable than another. *Id.* In order for a conviction for money laundering under § 34.02(a)(1) to be upheld, there must be direct or circumstantial evidence of a temporal connection, or nexus, between the money and some criminal activity.[6]

---

[6] *See, e.g., Ajisebutu v. State,* 236 S.W.3d 309 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd.) (money derived from fraudulent scheme of identity theft); *Lee v. State,* 143 S.W.3d 565 (Tex.App.–Dallas 2004, pet. ref'd) (co-defendant admitted to officers the money was derived from the sale of ecstacy and drug log used to keep track of transactions found in vehicle); *Davis v. State,* 68 S.W.3d 273 (Tex.App.–Dallas 2002, pet. ref'd) (money derived from fraudulently obtained insurance policies); *Thomas v. State,* 31 S.W.3d 422 (Tex.App.–Fort Worth 2000, pet. ref'd) (money derived from theft); *Lee v. State,* 29 S.W.3d 570 (Tex.App.–Dallas 2000, no pet.) (money derived from offense of securing execution of check by deception)*; Barrios v. State,* No. 06-06-00133-CR, 2007 WL 3400317 (Tex.App.–Texarkana Nov. 16, 2007, no pet.) (not designated for publication) (money hidden behind door panel, dog alerted to where money was found, owner of

14

vehicle was a "known cocaine trafficker"); *Ordaz,* No. 03-07-00039-CR, 2007 WL 2980147 (Tex.App.–Austin Oct. 10, 2007, pet. dism'd) (not designated for publication) (marihuana debris found in rear cargo area, driver paid $1500 by an unidentified man to drive to Mexican border and deliver currency hidden in engine compartment to an unknown man); *Vasquez v. State,* No. 09-05-536-CR, 2007 WL 2874291 (Tex.App.–Beaumont Oct. 3, 2007, pet. stricken) (not designated for publication) (appellant in possession of cocaine and "drug-trafficking paraphernalia"); *Granado,* No. 07-05-0444-CR, 2006 WL 2466972 (Tex.App.-Amarillo Aug. 25, 2006, no pet.) (not designated for publication) (officers detected a strong odor of marihuana on the cash and canine alerted to the money with evidence of extraneous offenses for possession of drug paraphernalia and prior police contact where methamphetamine residue was found in vehicle); *Nesbitt v. State,* No. 09-05-149-CR, 2006 WL 302115 (Tex.App.–Beaumont Feb. 8, 2006, no pet.) (not designated for publication) (appellant plead guilty); *Gonzales v. State,* No. 04-03-00563-CR, 2005 WL 1959168 (Tex.App.–San Antonio Aug. 17, 2005, pet. ref'd) (not designated for publication) (money derived from bribery), *cert. denied,* _ U.S. _, 127 S.Ct. 57, 166 L.Ed.2d 22 (2006); *Siler v. State,* No. 06-04-00090-CR, 2005 WL 1949198 (Tex.App.–Texarkana Aug. 16, 2005, no pet.) (not designated for publication) (appellant plead guilty); *Ramirez v. State,* No. 13-03-309-CR, 2005 WL 1796154 (Tex.App.–Corpus Christi July 28, 2005, no pet.) (not designated for publication) (appellant fled from officers on foot with bag containing $19,000 coupled with marihuana seeds and residue found on passenger seat of car); *Cantu v. State,* Nos. 13-04-146-CR, 13-04-148-CR, 2005 WL 1706507 (Tex.App.–Corpus Christi July 14, 2005, no pet.) (not designated for publication) (vacuum sealed wrappers containing bundled money hidden in engine compartment tested positive for amphetamines); *Todd v. State,* No. 08-03-00444-CR, 2005 WL 1124424 (Tex.App.–El Paso May 12, 2005, no pet.) (not designated for publication) (cocaine found on appellant); *Stallworth v. State,* No. 05-03-00990-CR, 2005 WL 300378 (Tex.App.–Dallas Feb. 9, 2005, pet. ref'd) (not designated for publication) (police discovered marihuana remnants after removing vehicle's door panel); *Cortez-Belleza v. State,* No. 04-03-00818-CR, 2004 WL 2945680 (Tex.App.–San Antonio Dec. 22, 2004, pet. ref'd) (swab test of vehicle tested positive for amphetamines and drugs/money seized at appellant's residence on prior occasions); *Pham v. State,* No. 05-03-00693-CR, 2004 WL 2395724 (Tex.App.–Dallas Oct. 27, 2004, pet. ref'd) (not designated for publication) (appellant admitted to officers the money was derived from selling ecstasy and drug log used to keep track of transactions found in vehicle); *Garcia Moreno v. State,* No. 13-03-569-CR, 2004 WL 2335285 (Tex.App.–Corpus Christi June 24, 2004, no pet.) (not designated for publication) (defendant plead guilty); *Davis v. State,* Nos. 05-03-00066-CR, 05-03-00069-CR, 05-03-00067-CR, 05-03-00070-CR, 05-03-00068-CR, 05-03-00071-CR, 2004 WL 784552 (Tex.App.–Dallas March 29, 2004, pet. ref'd) (not designated for publication) (money derived from scheme involving the securing execution of documents by deception); *Saldivar-Quintero v. State,* No. 04-03-00034-CR, 2004 WL 199269 (Tex.App.–San Antonio

Here, the evidence tending to establish a connection between the money and some unnamed criminal activity amounts to mere conjecture. In support of a nexus between Appellant's $17,620 and some unidentified "criminal activity," the State points to profiling characteristics and a positive alert by a narcotics dog: (1) Appellant opened the passenger door to speak to the officer, handed him his wallet when asked for his license, and exited on the passenger side at the officer's request;[7] (2) car had energy drinks and fast food wrappers on the floorboard giving it a "lived-in" look; (3) he could not give his uncle's exact address in San Diego;[8] (4) he was traveling east to west on Interstate 40;[9] (5) he was

_____

Feb. 4, 2004, no pet.) (not designated for publication) (appellant plead guilty); *Perez v. State,* No. 13-00-519-CR, 2003 WL 2006580 (Tex.App.–Corpus Christi May 1, 2003, pet. ref'd) (not designated for publication) (money derived from theft by public servant); *Igbinoba v. State,* Nos. 05-00-01566-CR, 05-00-01569-CR, 05-00-01567-CR, 05-00-01568-CR, 2001 WL 1071265 (Tex.App.–Dallas Sept. 14, 2001, no pet.) (not designated for publication) (money derived from forged checks).

[7]*United States v. $10,700 in U.S. Currency,* 258 F.3d 215, 226-27 (3d Cir. 2001)(suspicious behavior during stop, at best, suggests involvement in some unspecified furtive activity).

[8]*United States v. $5,000 in U.S. Currency,* 40 F.3d 846, 850 (6th Cir. 1994)(claimant's evasive explanation of trip's purpose provided, at best, "inchoate and unparticularized suspicion").

[9]Traveling a particular route does not establish probable cause for forfeiture. *See United States v. $252,300.00 in U.S. Currency,* 484 F.3d at 1274 ("Generalized allegations about . . . 'known drug destinations' and 'known drug routes' do not provide a nexus to drugs on these facts."); *United States v. $10,700,* 258 F.3d 215, 228 (3d Cir. 2001)("[W]e cannot credit the fact that the claimant was using a major interstate to be probative of drug trafficking.").

nervous throughout the encounter;[10] (6) he stared at his vehicle rather than maintaining eye

contact when answering one of Esqueda's questions; (7) he denied carrying a large sum

of cash;[11] (8) he was in possession of scales;[12] (9) he avoided showing Esqueda the

---

[10]A number of courts have observed that nervousness is of minimal probative value, given that many, if not most, individuals can become nervous or agitated when detained by police officers. *Glass v. State,* 681 S.W.2d 599, 602 (Tex.Crim.App. 1984); *Lassiter v. State,* 79 S.W.3d 736 (Tex.App.–Corpus Christi 2002, no pet.); *$10,700 in U.S. Currency,* 258 F.3d at 226. *See also $252,300.00 in U.S. Currency,* 484 F.3d at 1274; *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1072 (9th Cir. 1994). Another source of the nervousness can be that the person is carrying a large amount of cash. *United States v. A) 58,920.00 in U.S. Currency B) $38,670.00 in U. S. Currency,* 385 F.Supp.2d 144, 152 (D. Puerto Rico 2005) (apparent nervousness is of minimal probative value given appellant was carrying a large amount of currency in their luggage, which could be robbed or lost); *United States v. One Lot of U.S. Currency ($14,665),* 33 F.Supp.2d 47, 55 (D. Mass. 1998)(noting that appellant's nervousness during interaction with law enforcement officers "is not an unreasonable response, regardless of the source and intended use of the currency").

[11]*United States v. $191,910.00 in United States Currency,* 16 F.3d 1051, 1072 (9th Cir. 1994)(observing that discrepancies in claimant's story raised "a suspicion that [he] was involved in illegal activities, but not probable cause").

[12]Although digital scales may be classified as "drug paraphernalia;" *Hargrove v. State,* 211 S.W.3d 379, 386 (Tex.App.–San Antonio 2006, pet. ref'd), *cert. denied,* ___ U.S. ___, 28 S.Ct. 134, 169 L.Ed.2d 93 (2007), their mere presence supplies no nexus between Appellant's $17,620 and a drug-related criminal activity. *See generally United States v. $38,600.00 in U.S. Currency,* 784 F.2d 694, 698-99 (5th Cir. 1986). This is particularly so where the State presented no evidence of the presence of drugs in any amount on the scales.

17

money;[13] (10) the money was in a plastic bag;[14] (11) it was a large amount of money;[15] (12)

the money was divided into bundles and wrapped with rubber bands;[16] (13) he had an

---

[13]"[I]t is customary for people to carry cash, especially large amounts of cash, 'concealed.'" *$252,300.00 in U.S. Currency,* 484 F.3d at 1274; *$10,700 in U.S. Currency*, 258 F.3d at 233; *United States v. One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1055 n.8 (1st Cir. 1997) *superceded by statute on other grounds as recognized in United States v. Lopez-Burgos,* 435 F.3d 1, 2 (1st Cir. 2006).

[14]That the money in this case was not wrapped in such a fashion as to avoid detection by narcotics dogs or concealed in a compartment within the vehicle renders any connection to a drug-related felony speculative at best. *See e.g. United States v. $30,060.00 in U.S. Currency*, 39 F.3d 1039, 1044 (9th Cir. 1994) (rejecting government's contention that drug dealers carry their money in plastic bags). Cash wrapped in plastic wrap or fabric softener, which is often used to avoid detection by trained drug-sniffing dogs, is some evidence of nexus to the drug trade. *See $252,300.00 in U.S. Currency,* 484 F.3d at 1275 (stating fact that a large amount of currency "bundled in stacks held by rubber bands and wrapped in cellophane. . . must be given significant probative value"); *United States v. $84,615 in U.S. Currency,* 379 F.3d 496, 502 (8th Cir. 2004) (noting that vacuum-sealing is a "common ploy to mask odors such as might be detected by dog searches"); *United States v. $242,484.00,* 389 F.3d 1149, 1162 (11th Cir. 2004) (wrapping cash in cellophane-type material is a technique known to be used by drug dealers to prevent discovery by drug-sniffing dogs)*; United States v. $42,500.00 in U.S. Currency,* 283 F.3d 977, 982 (9th Cir. 2002) ("[C]ellophane, which is largely impermeable to gas, is commonly used to conceal the smell of drugs and avoid detection by drug dogs."); *United States v. $129,727.00 in U.S. Currency,* 129 F.3d 486, 491 (9th Cir. 1997) (discussing nexus between use of plastic wrap and fabric softener in packaging and drug activity).

[15]Possession of a large sum of money is not illegal in and of itself. *$27,920.00 in U.S. Currency v. State,* 37 S.W.3d 533, 535 (Tex.App.–Texarkana 2000, pet. denied). *$242,484.00 in U.S. Currency,* 389 F.3d at 1161 (quantity of cash alone insufficient to connect it to illegal drug transactions); *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1072 (9th Cir. 1994)(any amount of money, standing alone, would probably be insufficient to establish probable cause); *United States v. $67,220.00 in U.S. Currency,* 957 F.2d 280, 285 (6th Cir. 1992)(no court has yet held that the presence of a large sum of cash is sufficient, standing alone, to establish probable cause).

[16]*$10,700 in U.S. Currency,* 258 F.3d at 232-33 (currency rubber-banded in large bundles and concealed in baggage does not support an inference of drug trafficking under the probable cause standard).

empty suitcase; (14) he denied having any drugs in his vehicle;[17] (15) he stated he was going to Las Vegas;[18] (16) he failed to produce "documentation" for the money; (17) a narcotics dog alerted to the money and the large empty suitcase;[19] (18) an odor of narcotics on the empty suitcase;[20] (19) the close proximity of the cash to the empty suitcase that presumably contained narcotics at one time;[21] (20) an odor of narcotics on

---

[17]The State asserts Appellant's behavior was suspicious because he repeatedly stated there were no drugs in the car prior to any mention of drugs by Esqueda. In fact, Esqueda *first* mentioned drugs while he and Appellant were in his patrol car prior to the search when he asked Appellant whether his car contained grenades or narcotics such as marihuana or cocaine.

[18]*See* fn. 11.

[19]A positive alert by a drug detection dog, standing alone, does not constitute evidence that money was used in connection with a drug deal. *$7,058.84 in U.S. Currency v. State,* 30 S.W.3d 580, 588 (Tex.App.–Texarkana 2000, no pet.); *$80,631.00 v. State,* 861 S.W.2d 10, 12 (Tex.App.–Houston [14th Dist.] 1993, writ denied). Although federal circuit courts recognize "that a positive alert by a drug detection dog is, in the very least, strong proof of probable cause"; *United States v. Outlaw,* 134 F.Supp.2d 807, 812 (W.D. Tex. 2001), *aff'd,* 319 F.3d 701 (5th Cir. 2003), the evidentiary value of such an alert is being questioned because the spread of trace amounts of drugs in the nation's currency supply increases the likelihood of false alerts. *Id.* at 813. *See United States v. $506,231 in U.S. Currency,* 125 F.3d 442, 453 (7th Cir. 1997)(refusing "to take seriously the evidence of post-seizure dog sniff"); *United States v. $49,576.00 in U.S. Currency,* 116 F.3d 425, 427 (9th Cir. 1997) (positive alert entitled to little weight); *Muhammed v.* DEA, 92 F.3d 648, 653 (8th Cir. 1996) (discounting government's argument that dog alert constituted probable cause supporting administrative forfeiture due to high percentage of currency contaminated with drug residue); *United States v. $5,000 in U.S. Currency,* 40 F.3d 846, 849 (6th Cir. 1994)(evidentiary value of the narcotic dog's alert is minimal because it is well established that an extremely high percentage of all cash in circulation is contaminated with drug-residue sufficient to alert a trained dog); *$80,760.00,* 781 F.Supp. at 472 ("[R]ecitation of the profile elements and the alert of a narcotics detection dog, without more, does not establish probable cause to forfeit").

[20]*See* fn. 19.

[21]A positive alert to the exterior surfaces of two pieces of luggage in the trunk of Appellant's rental car does not rise to the level of credible evidence that the currency had been in close proximity to narcotics at any point in time. *See $136,205.00 (Johnson) v.*

the cash;[22] (21) the money was enough to purchase a felony amount of narcotics;[23] (22) money from drug trafficking travels east to west.

Profiling characteristics are normally factors courts consider when determining whether Fourth Amendment rights are implicated by a brief investigatory detention.[24] The mere fact that a person's actions match a drug courier profile and that person is carrying a large amount of money that might be involved in some illegal activity is insufficient to establish probable cause to justify forfeiture; *United States v. $49,576.00 in U.S. Currency,* 116 F.3d 425, 427-29 (9th Cir. 1997); *United States v. $80,760.00,* 781 F.Supp. 462, 475-76 (N.D.Tex. 1991)("In this circuit, it is well settled that a statement of profile characteristics will not, in and of itself, create a reasonable suspicion."), and it is insufficient to establish a nexus between the money and some criminal activity beyond a reasonable doubt.

---

*State,* 848 S.W.2d 888, 891 (Tex.App.–Houston [14th Dist.] 1993, no writ)(despite evidence of marihuana, drug paraphernalia, and a large amount of cash at residence, positive alert to safety deposit box at bank was insufficient to prove by a preponderance of evidence that deposit box funds were connected to marihuana confiscated at residence).

[22]The State asserts that the narcotics dog alerted to the money when, in fact, Trooper Rocha testified the dog alerted on the medium and large pieces of luggage only. There is no evidence indicating that the currency alone was removed from the luggage and alerted to in a controlled area or ever tested for the presence of drug residue.

[23]Evidence that a defendant had the *means* to commit an offense is not evidence that he committed that offense. *See U.S. v. $38,600.00,* 39 F.3d 1039, 1044 (9th Cir. 1994) (such evidence not credible, speculative).

[24]In the Fourth Amendment context, a drug courier profile can, at most, provide grounds for reasonable suspicion, it cannot establish probable cause. *See, e.g. United States v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 1586-87, 104 L.Ed.2d 1 (1989).

The State did not present any credible evidence from which it could be inferred Appellant was involved in any drug transaction, sale, or delivery at or around the time he was arrested for money laundering. The State produced no evidence of drugs being found. Nor did the State present any evidence of previous involvement in drugs or drug-related activities by Appellant. Appellant has no prior convictions or police contact related to drugs, has no known relationship with drug trafficking, and made no admissions related to the source of the money other than to say he earned it. Furthermore, the money was not packaged in any way to indicate a conscious desire to prevent its detection by drug dogs. Here we have no admissions, no drugs, no prior connection to drugs, and no obvious attempt to surreptitiously secrete the money or prevent its discovery. Simply put, we have no credible evidence of a temporal connection, or nexus, between the money and some criminal activity. Accordingly, we find the jury's verdict is not supported by legally sufficient evidence. Issue one is sustained.

Our disposition of issue one pretermits consideration of Appellant's second and third issues. Therefore, we reverse the trial court's judgment of conviction and render judgment of acquittal.

Patrick A. Pirtle
Justice

Campbell, J., concurring in result.

Publish.

21