NO. 07-06-0418-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 16, 2008
_____

DWAYNE ELONDO KING, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 6392; HONORABLE LEE WATERS, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant Dwayne Elondo King appeals his conviction by jury of the offense of money laundering and the court-assessed punishment consisting of ten years confinement, probated for ten years, and a $10,000 fine. We will reverse the judgment of the trial court.

Procedural and Factual Background

Appellant was charged by indictment with transporting the proceeds of criminal activity, namely, the sale of marijuana and/or controlled substances, of a value of $20,000

or more but less than $100,000.[1] Appellant plead not guilty and the matter proceeded to jury trial.

At trial, the State presented the testimony of Trooper Jerome Ingle and Deputy Julian Torres and a videotape from Ingle's patrol car. Evidence showed that Trooper Ingle stopped appellant on Interstate Highway 40 in Gray County for speeding. The trooper testified he asked appellant to sit in the patrol vehicle while he conducted a check on his driver's license.[2] While they waited, Ingle asked appellant where he was headed. Appellant responded that he and his passenger, Sherman Roberts, were going to his cousin's funeral in Phoenix. Ingle noticed that when he asked appellant when the funeral was going to be held, he appeared nervous and hesitant, and he stuttered. Appellant reacted the same way to the trooper's inquiries about his relationship with Roberts but answered quickly without hesitation to unrelated questions. When Ingle spoke with Roberts, he was initially reticent and calm, but as the conversation continued, he became nervous and defensive, at one point even using his cell phone in an apparent effort to talk with his lawyer. Roberts also told the trooper he and appellant were going to a family

---

[1] *See* Tex. Penal Code Ann. § 34.02(a)(1) (Vernon 2003). This provision states that a person commits an offense if the person knowingly acquires or maintains an interest in, receives, conceals, possesses, transfers, or transports the proceeds of criminal activity. "Criminal activity" means any offense, including any preparatory offense, that is classified as a felony under the laws of Texas or the United States or punishable by confinement for more than one year under the laws of another state. Tex. Penal Code Ann. § 34.01(1) (Vernon 2003).

[2] As Trooper Ingle completed a warning for speeding, he received notification that appellant's license was suspended. He issued appellant a citation for driving with an invalid license.

member's funeral in Phoenix, but the two men's responses to his questions about the funeral were inconsistent in some respects.

Trooper Ingle obtained consent to search the vehicle from Roberts, the owner of the PT Cruiser appellant was driving. As he was requesting permission, Ingle noticed Roberts twice looked over his shoulder at the rear of the vehicle. Ingle also obtained permission from appellant to search and asked if he had any drugs, weapons, or currency. Initially, appellant stated he had $2,000 on him. On further questioning, he admitted there was $20,000 in the car. Through additional questions, Ingle deduced that appellant did not know exactly how much money was in the car. Appellant told Ingle that he took the money from the safe in the pet store he owned, intending to purchase exotic pets for the store. Roberts told the trooper appellant owned two "dog food businesses."

At Trooper Ingle's request, appellant showed the trooper several bundles of money, wrapped in rubber bands, from inside appellant's pockets. The trooper informed appellant that a canine was going to be called in and if the dog alerted, any money in the car would be seized. When the dog arrived, he alerted to the right rear of the car and to a bag inside the vehicle. The bag contained $30,000 in cash, packaged in two bundles wrapped in rubber bands. At trial, the trooper testified that this manner of packaging was similar to that he had seen in past money seizures and this amount was enough to buy a felony amount of marijuana or other controlled substance.

Deputy Torres, a certified canine handler, testified to the training he and his drug dog Carlos received, to the free-air sniff Carlos performed around the vehicle and to the dog's more directed sniff of one of the bags. Because he had not been designated an expert witness, however, he was not allowed to testify about the meaning of Carlos's apparent alerts to the car and the bag. He was not allowed, for instance, to testify whether the dog's alerts showed the presence of narcotics on the money.[3] Both officers' testimony included their narration of the events depicted on the videotape recording made with Ingle's patrol car video camera and mobile microphone.

Following presentation of the evidence, the jury found appellant guilty of the second degree felony offense of money laundering. The trial court assessed punishment at ten years confinement in the Institutional Division of the Texas Department of Criminal Justice, probated for a term of ten years, and a fine in the amount of $10,000 to be paid over the course of appellant's probation. This appeal followed.

Sufficiency of the Evidence

By his fifth point of error, appellant contends the evidence was legally and factually insufficient to support his conviction. We agree, finding the evidence legally insufficient.

---

[3] The court also disallowed the State's efforts to elicit testimony from Torres that the dog's alert indicated "there is a scent there, that it was in close proximity to the money and how long the scent was there."

In conducting a legal sufficiency review, we must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 199 S.Ct. 2781, 61 L.Ed.2d 560 (1979)*; Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007); *Fowler v. State,* 65 S.W.3d 116, 118 (Tex.App.–Amarillo 2001, no pet.). If, based on all the evidence, a reasonably-minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003), *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and the standard of review on appeal is the same for both direct and circumstantial evidence cases. *Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); *Kutzner v. State,* 994 S.W.2d 180, 184 (Tex.Crim.App. 1999).

A legal sufficiency analysis requires an appellate court to consider all the evidence admitted that will sustain the conviction, including improperly admitted evidence.[4] *Hernandez v. State,* 190 S.W.3d 856, 863-64 (Tex.Crim.App. 2006). As fact finder, the jury is the exclusive judge of the credibility of witnesses and the weight to be afforded their testimony. *Id.* A reviewing court must give deference to "the responsibility of the trier of

_____

[4] Therefore, without expressing any opinion on appellant's contention in his first issue that the court erred under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), by allowing the trooper to testify to statements made by his co-defendant Roberts, we have considered those statements in our legal sufficiency review.

fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, quoting *Jackson*, 443 U.S. at 318-19. Under the *Jackson* standard, we permit juries to draw multiple reasonable inferences as long as each inference is supported by evidence presented at trial. *Hooper,* 214 S.W.3d at 15. However, juries are not permitted to reach conclusions based on mere speculation or factually unsupported inferences or presumptions.[5] *Id.* at 16. When we consider a contention that a jury's finding based on inferences is not supported by legally sufficient evidence, our task is to determine whether the necessary inferences are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id*. at 16-17.

Consistent with the indictment, the court's charge authorized the jury to find appellant guilty if it found beyond a reasonable doubt that, on or about the named date in Gray County, Texas, he knowingly transported the proceeds of criminal activity, to wit: the sale of marihuana and/or controlled substances, of the value of $20,000 or more but less than $100,000. It is undisputed appellant was, at that time and place, knowingly transporting cash of that value. The issue is the sufficiency of the evidence to prove beyond a reasonable doubt the cash was the proceeds of the sale of a controlled substance.

---

[5] In *Hooper*, the Court of Criminal Appeals further distinguished inferences from speculation, defining an inference as "a conclusion reached by considering other facts and deducing a logical consequence from them" and speculation as "mere theorizing or guessing about the possible meaning of facts and evidence presented." The court noted that "[a] conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt." *Hooper,* 214 S.W.3d at 16.

It is undisputed also that there is no direct evidence the cash found in the vehicle constituted such proceeds. Both testifying officers acknowledged having no information about the source of the cash or appellant's means of acquiring it. If we are to affirm the jury's finding of that ultimate fact over appellant's legal sufficiency challenge, we must agree with the State that the finding is supported by the cumulative force of the circumstantial evidence and reasonable inferences from that evidence. After carefully reviewing the evidence, we agree instead with appellant that the finding is supported by no more than speculation.

We affirmed a conviction for money laundering against a legal sufficiency challenge in *Granado v. State,* No. 07-05-0444-CR, 2006 WL 2466972 (Tex.App.–Amarillo Aug. 25, 2006) (mem. op., not designated for publication). Like this case, evidence there showed a drug dog alerted on the vehicle in which the $6100 cash was found. Officers also testified in that case, however, that the cash had a strong smell of marijuana. Evidence of the defendant's extraneous offenses for possession of drug paraphernalia, and of a police contact during which methamphetamine residue was found in the defendant's vehicle, also was present. *Granado,* 2006 WL 2466972 at *1. The evidence presented in *Granado* provided evidence of a nexus between the money and some criminal activity that had previously taken place. *See Deschenes v. State,* __ S.W.3d __, No. 07-06-00420-CR, 2008 WL 1721545 (Tex.App.–Amarillo April 14, 2008) (not yet released for publication).

Here, evidence connecting the cash with the sale of controlled substances included the trooper's testimony that drug traffickers frequently travel I-40, that in his eight years as a trooper he personally had seized over 5000 pounds of marijuana, fifty-two pounds of cocaine and twenty-six pounds of "Ecstasy," in addition to approximately $1.6 million, and that a trafficking pattern exists on I-40, such that "[p]redominantly the narcotics is traveling from the West Coat to the East Coast and the money is traveling from the East Coast back to the West Coast." He agreed with the District Attorney that "[s]o if somebody had picked up narcotics on the West Coast, transported it back to the east and sold it, then they would then take that money and transport the money back to the West Coast to pick up more. . . ." The trooper testified also that the cash was packaged in bundles in a manner similar to other cash he had seized. Evidence showed the cash was deposited promptly after its seizure, without testing for drug residue. The record does not describe the condition or the denominations of the currency. As noted, however, the trooper said the cash was enough to buy a felony amount of marijuana or other controlled substance.

While the evidence shows appellant was transporting cash westbound on I-40 under the general circumstances described by Trooper Ingle as common to drug trafficking, the identification of appellant's cash as drugs sales proceeds depends primarily on the inferences that reasonably can be drawn from the drug dog's alert. As noted, the evidence is that the dog alerted on the right rear area of the vehicle. When the hatch of the PT Cruiser was opened, the dog jumped into the cargo area on top of two pieces of luggage. Trooper Ingle removed the two luggage pieces from the vehicle and set them on the

8

ground.  Torres testified Carlos's reaction to one of the bags constituted an alert.[6]  Ingle opened the bag, revealing the two bundles of cash.

No testimony establishes that Carlos's alert means he detected the odor of a controlled substance about the bag.[7]  For purposes of our analysis, however, we will assume the jury reasonably could infer that, because Carlos was trained to alert to drug odors, and alerted, he detected the odor of a drug.[8]  And, without examining the reasonableness of it on this record, we will assume for purposes of our analysis that the jury reasonably could infer that a drug odor actually was present, that is, that Carlos was correct.[9]

---

[6] Testimony and the video show the dog bit the bag and dragged it briefly. Deputy Torres testified that Carlos was trained to show an alert by scratching at the object of the alert, and had never before bitten to indicate an alert.  When asked if the bite was an alert, he said, "To me it was. This is the first time that he had ever actually bitten anything looking for his toy."  Torres explained that the dog's toy was a short piece of plastic pipe the canine expected to be given as a reward.  While Torres's testimony and the video do not inspire great confidence, viewing the evidence in the light most favorable to the verdict, the jury could have agreed the dog alerted on the bag.

[7] *Cf., e.g., State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex. 1991) (in forfeiture case, dog handler testified that based on dog's reaction, money had been in recent close proximity to controlled substance).

[8] Said another way, we will assume the jury reasonably could infer the dog alerted to the bag in accordance with his training and not for some other reason.  *Cf., e.g., $11,014.00*, 820 S.W.2d at 785 (handler testified dog would not alert on money absent an odor from controlled substance).

[9] *Cf. Granado*, 2006 WL 2466972 at *2 (drug dog alerted on trunk area of vehicle, where cash was found, but two officers also testified cash had a strong smell of marijuana).

To conclude from the evidence that the cash in the bag was proceeds of the sale of a controlled substance, however, the jury would have been required to draw further inferences, beginning with an inference that the odor Carlos detected emanated from the cash.[10] No evidence supports such an inference. The video shows the bag contained articles of clothing in addition to the two bundles of cash. On this record, the jury was required to speculate whether Carlos detected a scent on the bag itself, the cash or another of the bag's contents. Further speculation then was required to reach the ultimate conclusion that the cash was "acquired or derived directly or indirectly from, produced through, or realized through" the sale of illicit drugs.

Unlike in *Granado*, nothing else connects appellant with the sale of marijuana or another controlled substance.[11] Even when cumulated with the evidence of the route appellant and Roberts were traveling, their reactions and responses to the trooper's questions, appellant's reluctance to admit to his possession of a large amount of cash, and the other circumstances the State finds incriminating,[12] we cannot agree that the drug dog's alert allowed the jury reasonably to infer appellant's guilt of the charged offense beyond a

---

[10] The evidence presented at trial would not permit an inference as to whether the odor emanated from one bill or many among the $30,000.

[11] *See also Deschenes v. State,* __ S.W.3d __, No. 07-06-00420-CR, 2008 WL 1721545 (Tex.App.–Amarillo April 14, 2008) (not yet released for publication) (surveying case law in money laundering cases).

[12] The State points, for example, to the "lived-in look" of the vehicle and the absence of clothing appropriate for a funeral.

reasonable doubt.[13] The only direct evidence of the source of the cash appellant carried was that it came from the safe at his business in Detroit.[14] The jury was free to disbelieve that story, but it could not substitute a conclusion, unsupported by facts, that the cash instead was derived from the sale of a controlled substance.[15]

We sustain appellant's fifth issue. Finding it dispositive of the appeal, we do not address his remaining issues. Tex. R. App. P. 47.1. Because we have found the evidence supporting the judgment of the trial court to be legally insufficient, we reverse the judgment and render a judgment of acquittal.

James T. Campbell
Justice

Publish.

---

[13] *See Hooper,* 214 S.W.3d at 15-16 (civil law prohibition of "inference-stacking" does not apply to sufficiency analysis in criminal cases, but each inference drawn must find support in evidence).

[14] Appellant did not testify. His wife testified the couple owned, through a corporation, two pet stores in Detroit, Michigan. The defense introduced a federal corporate income tax return for a corporation doing business as Discount Pet Supplies.

[15] Trooper Ingle's statement that the cash was enough to buy a felony amount of marijuana or other controlled substance does not fill the evidentiary void. Even if the jury could infer from the evidence that the cash was intended to be used to buy marijuana or another controlled substance, that would not prove the cash was the proceeds of the *sale* of a controlled substance, under the definition of proceeds in the money laundering statute. *See* Tex. Penal Code Ann. § 34.01(4) (Vernon 2005). *Cf.* Tex. Code Crim. Proc. Ann. arts. 59.01(2)(B)(i), 59.02(a) (Vernon 2006-2007) (defining contraband subject to forfeiture to include property "used or intended to be used" in commission of certain felonies).