

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00046-CR

---

ARMEN ALEX GRIGORYAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 31st District Court
Wheeler County, Texas
Trial Court No. 5536, Honorable Steven R. Emmert, Presiding

---

December 21, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Armen Alex Grigoryan, was convicted by the trial court of money laundering with funds valued at $30,000 or more but less than $150,000, a third degree felony.[1] He was sentenced to eight years' confinement and assessed an $8,000 fine. Appellant challenges his conviction by three issues contending (1) the evidence is insufficient, (2) trial counsel was ineffective, and (3) he was denied a

---

[1] TEX. PENAL CODE ANN. § 34.02(e)(2).

fair trial by not having a neutral and detached factfinder. The State did not favor this Court with a brief. We reverse and render.

## BACKGROUND

Appellant and his father, originally from Armenia, reside in California. Appellant is the general manager of his father's profitable automotive oil distribution business. In November 2021, he and his father traveled to Arkansas in a van belonging to Appellant's brother to hire contractors for an investment property.[2] After they arrived in Arkansas, Appellant's wife called him and insisted he return home for Thanksgiving. Complying with his wife's request, Appellant left his father in a motel and began the drive to California on Interstate 40. While traveling through Wheeler County, Texas, he was stopped for a traffic violation. Appellant stopped the van beyond the shoulder of the road near a ditch.

The deputy who initiated the stop became suspicious Appellant was involved in human trafficking because he was the sole passenger in a van. He began issuing a warning for the traffic violation and questioned Appellant about his travels and whether he had anything illegal with him or any amounts of money. According to the deputy, Appellant told him he was traveling from Arkansas to California, disclosed he had approximately $2,000 to $3,000 in cash, and denied having any contraband. Appellant explained he traveled with cash because his bank card was sometimes inoperable.

After the deputy issued the warning, he asked if he could search the van to which Appellant consented without hesitation. The deputy's suspicion was piqued because

---

[2] Appellant testified he accompanied his father because of his health issues and inability to speak English well.

Appellant had pulled off the road beyond the pavement which he described as "highly abnormal from the motoring public." He was also suspicious of air fresheners in the van, and he doubted Appellant's travel itinerary.

During a search of the van at the scene, the deputy observed an empty mini-fridge, a bag of chips, food wrappers, blankets, an air mattress, and two five-gallon trash bags in the rear of the van which contained clothing and cash totaling $122,000. The cash was bundled by rubber bands. Based on his training and experience, the deputy read Appellant his rights and arrested him for money laundering.

Appellant and the van were transported to the jail. A secondary search of the van revealed $2,000 behind the driver's seat which Appellant had previously disclosed, but he denied any knowledge of the cash in the trash bags.

A K-9 deputy and his trained narcotics dog were asked to "run a money line" which involved placing the confiscated cash in various boxes to determine whether the odor of narcotics was present on the cash. The dog did not alert on any of the boxes.

The dog was then tasked with detecting the odor of narcotics on the exterior of the van.[3] The K-9 deputy testified the dog "showed interest" by the back passenger door and rear fender wheel area. He explained that a positive alert indicated narcotics were in the van at some point. However, no drugs, paraphernalia, or illegal contraband were found in the van or on Appellant.

---

[3] The van was in an enclosed sally port at the time of the K-9 search.

Appellant was indicted for "knowingly possess[ing] the proceeds of criminal activity, namely *selling a controlled substance . . . .*" (Emphasis added). At a bench trial, the State presented the arresting deputy as a witness and the K-9 deputy as an expert witness. The arresting deputy, constantly prefacing his answers with his "training and experience" and "totality of the circumstances,"[4] testified that traveling on Interstate 40, a known drug corridor, with air fresheners, food wrappers, blankets, and a large amount of cash were indicators of drug trafficking. He also disbelieved Appellant's reason for traveling between California and Arkansas in a short period of time. During cross-examination, however, he conceded it was not illegal to drive with air fresheners, possess bundled cash, or travel along Interstate 40 between California and Arkansas. He also conceded that at the time of the stop, he was merely suspicious. He agreed he did not find any indicia of drug dealing such as ledgers, scales, or baggies, and Appellant was not in a suspicious place at the time of his arrest.

The K-9 deputy, testifying as an expert for the first time, explained his dog's training and confirmed the dog did not alert on the money line but did alert on the exterior of the van. During cross-examination, when asked if a positive alert on the van could distinguish between possession or sale of narcotics, the deputy answered, "so my K-9 alerting on the vehicle would not indicate that he was in possession, transporting, selling, consuming."

Appellant testified in his own defense. When he and his father began their journey, his father loaded the van first and then picked him up. Appellant was unaware of the

---

[4] "Totality of the circumstances" was invoked over a dozen times prompting defense counsel to ask that the record reflect the prosecutor was coaching the deputy by nodding his head and in a separate instance stating "you can say totality of the circumstances all you want. I'm sure you talked to counsel about that."

trash bags of cash when he loaded his belongings which were in a plastic grocery type bag. He believed the cash in the trash bags belonged to his father because his father distrusted banks and needed cash to hire contractors in Arkansas.[5] He explained he was in Arkansas for only a short time because his wife insisted he return to California for Thanksgiving.

Appellant's father, through a translator, testified and claimed ownership of the cash bundled in rubber bands. He explained he bought the property in Arkansas as an investment and planned to hire contractors to develop the property.

At the conclusion of the testimony, the trial court found Appellant guilty. After a very brief punishment phase, the trial court sentenced Appellant to eight years' confinement and assessed an $8,000 fine.

ISSUE ONE—SUFFICIENCY OF THE EVIDENCE

Appellant contends his conviction for money laundering is based on mere speculation regarding a large amount of cash rendering the evidence insufficient to support his conviction. We agree.

The State was required to prove Appellant knowingly possessed proceeds of criminal activity in an amount of $30,000 or more but less than $150,000. TEX. PENAL CODE ANN. § 34.02(a)(1), (e). "Proceeds" are funds acquired or derived directly or indirectly from, produced through, or realized through some criminal activity. § 34.01(4).

---

[5] Appellant's father's distrust was the result of financial dealings with banks in Armenia.

"Criminal activity" is defined as any offense, including a preparatory offense, classified as a felony. *Id.* at (1)(A).

The only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*. See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

We give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

Appellant relies heavily on this Court's decision in *Deschenes v. State*, 253 S.W.3d 374, 386 (Tex. App.—Amarillo 2008, pet. ref'd), in which the appellant's conviction was reversed and a judgment of acquittal rendered under strikingly similar circumstances. Deschenes was driving a rental car and was stopped for speeding on Interstate 40, a route known by the trooper to be used by drug smugglers. *Id.* at 376–77. The trooper

6

became suspicious when he observed empty beverage containers and food wrappers which gave the car's interior a "lived-in" look. He also detected Deschenes was nervous. He disbelieved Deschenes's travel destination. After he was issued a warning, Deschenes gave consent for a search of the car. No evidence of drugs or contraband was found in the car's interior but when the trooper searched the trunk of the car, he observed three pieces of luggage—one contained clothing and hygiene items, a second was empty, and a smaller bag contained bundles of cash held together by rubber bands. Appellant admitted, "Okay, I lied." *Id.* The trooper also found scales in one of the bags. *Id.* at 377. A DPS canine was called to run the car. The canine did not alert to the interior or exterior but did alert to the small bag containing the cash and the large empty bag. *Id.* Deschenes was arrested and convicted for money laundering.

During trial, the State referenced "drug trafficking" and "drug smuggling" but did not connect Deschenes and the cash to an identified felony.[6] *Id.* at 378. To prove its case, the State relied on the trooper's testimony that drug proceeds "shipped to the east come back westbound to either the originator who sent the drugs or someone that's going to purchase narcotics or weapons or whatever the contraband may be." *Id.* at 381. This Court found the trooper's testimony "speculative" and without probative value without a connection between the cash and drug trafficking. *Id.* For a money laundering conviction to stand, "there must be direct or circumstantial evidence of a temporal connection, or nexus, between the money and some criminal activity." *Id.*

---

[6] The indictment charging Deschenes was defective because it did not specify a particular felony, but he waived the issue on appeal. At trial, however, the State argued the cash came from "sales and trafficking in narcotics." *Deschenes*, 253 S.W.3d at 380.

As in the case before us, in *Deschenes*, the State relied on numerous profiling characteristics and a positive alert by a narcotics canine to establish a connection between the cash and criminal activity. This Court found such "evidence" to be mere conjecture." *Id.* at 382–83. No credible evidence was presented to infer Deschenes was involved in a drug transaction, sale, or delivery at or around the time of his arrest for money laundering. *Id.* at 385. He had no prior conviction related to drugs, no relationship with drug trafficking, and he did not attempt to hide the cash in packaging designed to prevent its detection. *Id.*

In the underlying case, the State similarly used profiling characteristics to justify charging Appellant with money laundering. Unlike the scales found in *Deschenes* and his admission that he lied, here, the arresting deputy admitted Appellant told the truth about the $2,000 that was found behind the driver's seat and that he was not carrying anything illegal in the van. Thus, the evidence in this case is weaker than the evidence presented in *Deschenes*.[7]

Appellant testified the van belonged to his brother and he used it "just a little bit." He testified he has never been involved in the narcotics business. He acknowledged a misdemeanor theft conviction in 2003 but did not have any felony convictions. The K-9 deputy testified the positive alert on the van did not indicate Appellant was involved in the sale of narcotics—the specific offense charged as the criminal activity element of money

[7] Under the doctrine of horizontal *stare decisis*, this Court must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022). *Deschenes* has not been superseded by this Court or the Court of Criminal Appeals.

laundering.  The State failed to prove beyond a reasonable doubt a nexus between the cash found in the trash bags and the sale of narcotics.  Appellant's first issue is sustained.

Our disposition of issue one pretermits consideration of his remaining two issues.

## CONCLUSION

The trial court's judgment is reversed, and a judgment of acquittal is hereby rendered.

Alex Yarbrough
Justice

Do not publish.