NO. 13-13-00338-CR

IN THE
COURT OF APPEALS
FOR THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS

LAURA DAY,

Appellant pro se,

—v—

THE STATE OF TEXAS,

Appellee.

**APPELLANT'S REPLY BRIEF**

Laura Day, Appellant Pro Se
TDCJ-CID # 1863665 / Crain Unit
1401 State School Road,
Gatesville, TX 76599

FILED

RECEIVED
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

JUN 10 2015

CECILE FOY GSANGER, CLERK
BY

DELIVERED

JUN 10 2015

13th COURT OF APPEALS

# TABLE OF CONTENTS

Table of Contents..................................................i

Index of Authorities..............................................ii

Preliminary Reply to State's 51-Page Statement of Facts..........1

Argument in Reply to [SB], Issue One.............................7

Argument in Reply to [SB], Issue Two............................24

Argument in Reply to [SB], Issue Three..........................26

Argument in Reply to [SB], Issue Four...........................26

Argument in Reply to [SB], Issue Five...........................28

Argument in Reply to [SB], Issue Six............................33

Argument in Reply to [SB], Issue Seven..........................35

Argument in Reply to [SB], Issue Eight..........................36

Argument in Reply to [SB], Issue Nine...........................37

Argument in Reply to [SB], Issue Ten............................38

Conclusion and Prayer...........................................38

Certificate of Service..........................................39

TABLE OF AUTHORITIES

## U.S. Supreme Court Cases

Boag v. MacDougal, 454 U.S. 364 (1982)...........................5

Carmell v. Texas, 529 U.S. 513 (2000).......................30, 31

Caulder v. Bull, 3 U.S. 383 (1798)..........................30, 31

Collins v. Youngblood, 497 U.S. 37 (1980).......................30

Haines v. Kerner, 404 U.S. 519 (1972)...........................5

Jackson v. Virginia, 443 U.S. 307 (1979)........................8

## United States Court of Appeals Cases

Papantony v. Hedrick, 215 F.3d 863 (8th Cir. 2000).............5

United State v. Dabeit, 231 F.3d 979 (5th Cir. 2000)...........5

## Texas Courts

Acosta v. State, 429 S.W.3d 621, n.47 (Tex.Crim.App. 2014)..21, 22

Batterbee v. State, 537 S.W.2d 12 (Tex.Crim.App. 1976).....24, 25

Black v. State, 645 S.W.2d 789 (Tex.Crim.App. 1983).....29, 30,32

Buffkin v. State, 179 S.W.3d 166 (Tex.App. Houston [14th Dist.]
2005, aff'd, 207 S.W.3d 779 (Tex.Crim.App. 2006)............ 4, 5

Chalin v. State, 645 S.W.2d 265 (Tex.Crim.App. 1983)...........30

Cleveland v. State, 177 S.W.3d 374, 385-386 (Tex.App.-
Houston [1st Dist.] 2005, pet.ref'd)........................33, 34

Cunningham v. State, 848 S.W.2d 891, 906 n.1 (Tex.App.-
Corpus Christi 1993, pet.ref'd)...............................30

Davis v. State, 817 S.W.2d 345 (Tex.Crim.App. 1991)............4

Deschenes v. State, 253 S.W.3d 374, 378 (Tex.App.-Amarillo,
2008, pet.ref'd)........................................10, 11, 26

Dusek v. State, 978 S.W.2d 129, 133 (Tex.App.-Austin,
1999, pet.ref'd)............................................14

ii.

Fisher v. State, 887 S.W.2d 49, 57 (Tex.Crim.App. 1994).......11

Giesberg v. State, 984 S.W.2d 245 (Tex.Crim.App. 1998).........33

Howard v. State, 145 S.W.3d 327, 334 (Tex.App. Fort Worth, 2004, no pet.)....................................................34

Jefferson v. State, 189 S.W.3d 305 (Tex.Crim.App. 2006).......13

Jones v. State, 979 S.W.2d 652 (Tex.Crim.App. 1998)...........30

Lemoine v. State, 85 S.W.3d 385 (Tex.App.-Corpus Christi, 2002)...................................................30

Light v. State, 15 S.W.3d 104 (Tex.Crim.App. 2000).............4

Montgomery v. State, 369 S.W.3d 188, 193 (Tex.Crim.App. 2012)..33

Perryman v. State, 798 S.W.2d 326 (Tex.Crim.App. 1989).........36

Price v. State, 626 S.W.2d 833, 836 (Tex.App.-Corpus Christi 1981, no pet.)........................................27, 28

Rodriguez v. State,___ S.W.3d___ (Tex.Crim.App. 2014), (PD. 1189-13)........................................9, 14, 15

Rosillo v. State, 953 S.W.2d 808, 811 (Tex.App.-Corpus Christi, 1997, pet.ref'd)........................................30

Schmutz v. State, 440 S.W.3d 29 (Tex.Crim.App. 2014)..........29

Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989), ..................................................33, 34

Tello v. State, 180 S.W.3d 150, 158 (Tex.Crim.App. 2005).......33

Thorton v. State, 994 S.W.2d 845 (Tex.App.-Fort Worth, 1999, no pet.)....................................................14

Weatherford v. State, 828 S.W.2d 12 (Tex.Crim.App. 1992).........4

Williams v. State, 235 S.W.3d 742, n.81 & 82 (Tex.Crim.App. 2007)......................................................21 , 22

NO. 13-13-00338-CR

IN THE
COURT OF APPEALS
FOR THE THIRTEENTH JUDICIAL DISTRICT
CORPUS CHRISTI, TEXAS

LAURA DAY,

Appellant pro se,

-v-

THE STATE OF TEXAS

Appellee.

APPELLANT'S REPLY BRIEF

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS ABOVE:

Appellant LAURA DAY ("Day"), respectfully replies to the arguments set out in the State's brief.* Tex.R.App.Pro. 38.3.

I. Preliminary Reply to the State's 51-Page Statement of Facts

A. The State's Over-Length Brief, T.R.A.P. 9.4(i)(B),(4).

Including the Index and Statement of the Case, the State has submitted a brief totaling 107 pages, with a word court consisting of 23,507 words.

B. The State's Summary of the Argument.

While the State denigrates Day's brief as non-compliant under T.R.A.P. 38.1, the [writer] for the State apparently holds himself immune from the same appellate rules. The [writer] flat

_____
* (Hereinafter noted as SB)

ignores Rule 38.1(h), holding: "The brief must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief. This summary must not merely repeat the issues or points presented for review." see also Rule 38.2(1), T.R.A.P.

## C. The [Writer's] Statement of Facts, SB 2-52.

Although the State is not required to include a "Statement of Facts," Rule 38.2(a)(B), in what must be some kind of record, the [writer] submits 51 pages of a statement of facts, replete with mistatements, self-contradictions, a mountain of fallacy, and a prodigious flow of invective speculations.

The [writer], by all accounts, simply ignores the content of Day's brief, and reduces his Statement of Facts into his own speculative [retrial]. The [writer] substitutes the actual facts contained in the trial record and replaces them with his own inherently unbelievable fallacies.

For example, the [writer] selects "snippets" from the trial record and distorts the facts to meet his favor, while evading the exclupatory facts that undermined the State's case.

A stark example. During trial the prosecutor went to great lengths to convince the jury that Day took the time to stop and rinse the sand off [T.S.'] body before loading him in her vehicle. See SB- 6,10, and 37. But see also: 7-RR-79, 80, 146, 147, 159, 160, 210; and 8-RR-29.

Yet another gross example deals with the [writer's] flat-out misrepresentations cited in SB- 36-38, and 62.

Here the [writer] obscures the facts adduced at trial,

(2)

and now defies the record by falsely accusing Day of physically drowning [T.S.] by holding him under the water. This fabrication of facts is an attempt to show the connection of the bruise on [T.S.'] arm had a bearing on how he was drowned. Of course this was not the fact demonstrated to the jury.

Also, as to SB-62, again, the [writer] steers from the trial record with his own versions of speculation and tells this Court [T.S.] was already dead, and in the back seat of Day's car when she relocated her vehicle a second time.

Forthright, this simple did not occur, nor did the State's own prosecutor allude to this absurdity during trial.

Day thwarts this concocted allusion of underhandedness by noting: If [T.S.] was already dead in the backseat of Day's car (which he was not), then notedly-- he would have already been deceased in [Kleberg] County, Texas, (while in the backseat of Day's car), thus, notedly, the State's case fails under the venue issue raised at Issue 5 in Day's brief. See also SB-70-74.

Finally, while there remain numerous other inconsistencies and misrepresentations in the SB (statement of facts), these improprieties will be addressed in Day's reply in seriatim of the arguments.

D. Appellant's Briefing Rules to be Construed Liberally.

Throughout the SB, the [writer] begs for a victory on the statutory claims that Day's brief is: 1) non-compliant, T.R.A.P. 38.1; and 2) the issues were not properly preserved for review,

(3)

T.R.A.P. 33.1. See SB @ passim.

The [writer] chastens Day for allegedly failing to present anything for review by "omitting record citations," and failing to note appropriate "citations to authorities." SB-Passim. But the [writer's] assertions have no merit.

A fair reading of Day's brief belies the [writer's] own fantastical mischaracterizations. Also, assuming that Day's brief contained any of the representations made by the [writer], this Court is still obligated to review every argument raised that is necessary to the disposition of her appeal. See T.R.A.P. 47.1(a); Light v. State, 15 S.W.3d 104 (Tex.Crim.App. 2000); Davis v. State, 817 S.W.2d 345, 346 (Tex.Crim.App. 1991)(holding that the court of appeals should not dismiss a point of error when it is properly briefed by a party). The failure by a court of appeals to address a point of error properly raised by a party requires remand for consideration of that point. Id. at 346 (remanding a neglected point of error to the court of appeals for consideration); cf. Weatherford v. State, 828 S.W.2d 12, 13 (Tex.Crim.App. 1992)(same).

Regardless of the [writer's] mistatements here, the Court of Appeals in Bufkin v. State held:

> "While a brief must contain appropriate citations to authorities and to the record, Rule 38.1(h), the briefing rules found in the Rules of Appellate Procedure are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case. Id. at 38.9. Accordingly, the rules are to be construed liberally and substantial compliance with the rules may, in the court's discretion, be sufficient. TEX.R.APP.P. 38.9. In other words, it is the court's prerogative, not the parties' to insist on unerring compliance with the briefing rules.

(4)

Where, as here, the court has had no difficulty locating the pertinent portions of the record relating to appellant's ...point of error, it is within the court's discretion to review the point of error."

Id., 179 S.W.3d 166, 173-74 (Tex.App.-Houston (14th Dist.] 2005), aff'd, 207 S.W.3d 779 (Tex.Crim.App. 2006).

While the [writer], himself, cites a barrage of inapplicable caselaw on this score, he fails to recognize Rule 38.9 in regards to its application here, and in accord with the United States Supreme Court's holding in Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594 (1972) holding: "Pro se litigants' pleadings are to be construed liberally and held to less stringent standards than formal pleadings drafted by lawyers; if the court can make a reasonable reading of the pleadings that state a valid claim · on which the litigant could prevail, it should do so despite the failure to cite proper legal authority or confusion of legal theories;" see also Boag v. MacDougal, 454 U.S. 364, 102 S.Ct. 700 (1982)(same); Papantony v. Hedrick, 215 F.3d 863 (8th Cir. 2000)(pro se petitioners should not be unreasonably subjected to stringent procedural niceties); see also United States v. Dabeit, 231 F.3d 979 (5th Cir. 2000)("Courts of Appeals have a duty to follow precedent, especially Supreme Court precedent").

This Court should ignore the State's ambiguous assertions and conduct an adequate review on the points of which Day has properly briefed.

While there may be some confusions raised in Issue One, they do not arise from Day's version of facts. Instead, any confusion apparent stems from the State's method of submitting the two theories under various statutes of the penal code.

(5)

## E. The [Writer's] Unethical Pejorative Attacks on Day.

...."Omit irrelevances, slang, sarcasm, and personal attacks. Ad hominem attacks are particularly distasteful to appellate judges. Attacks in the brief ... rarely bring you anything but condemnation by an appellate court. All that scorched-earth, take-no-prisoners, give-no-quarter, hardball stuff is out...." Roger J. Miner, Twenty-Five "Dos" for Appellate Brief Writers, 3 Scribes J. Legal Writing 19, 24-25 (1992).

... "[Never] misrepresent the opposition. A sure way to lose an argument is to make the opponent more of a "bad-guy" or "simpleton," than the facts warrant. Be sure your interpretation of opposing view points is in no way distorted." John M. Lannon, The Writing Process 332 (1989). See also "The Winning Brief," Second Ed., Bryan A. Garner, Ch. 71, 72.

============================

Rounding off the final 37-pages of brief arguments to his suitability, the [writer] rants throughout the pages with a diatribe of invectives in the hard use that would be embarrassing in a barroom, let alone this Court.

Lacking in authority, the [writer] attempts to eviscerate the record by resorting to a seemingly endless stream of un-provoked hyperbole and perversions. The [writer] denigrates Day's efforts to posit her points for relief with negatives such as: "as tangents;" "failing to [lie] her way out of a conviction because she did not want to be cross-examined for days about all the [lies] she spewed forth;" all the other [lies] and she [lied];" next followed by permutations of the root word [distort] (distorting the facts and law and evidence), then ignore (ig-noring the law and evidence) and close behind it, misconstrue (misconstruing the law and evidence). SB 55-92.

(6)

But sadly it does not end here. Throughout Issues One thru Ten, the [writer] continues to belittle Day with dismissive adjectives, apparently without any consideration for Day or this Court. Day concedes defeat [only] to the [writer's] ranting contest —which she never entered— and respectfully suggests a return to the record [facts] and [law] to resolve her properly briefed issues she courteously submitted to the State and this Court.

## Argument in Reply to the [SB], Issue One:

### A. The Evidence was Legally Insufficient to Support Day's Conviction for Capital Murder. Appellant's Brief @ 33.

If contradictions raised in legal arguments were olives, the State's here would be labled "super-colossal."

Indeed, the State's disparate contentions argued in Issue One are not of assistance to the Court. The [writer's] rebuttal is a crudely posited approach rife with self-contradictions and fantastical mischaracterizations of the facts. In its final analysis, this Court will see that the [writer's] attack is nothing more than an assault on Day's constitutional guarantees, as well as the integrity of settled State and Federal caselaw, and in the end on the Court's judicial process itself.

### 1. Facts not in Dispute Relevant to Issue One:

There is no disagreement between the parties concerning the applicable standard for measuring the legal sufficiency

(7)

of the evidence. Jackson v. Virginia, 443 U.S. 307, 318-319 (1979); see also SB-56 (same).

There is no dispute that the elevating factor giving rise to the capital murder statute was submitted under § 19.03(a)(8), the age of [T.S.].

Day conceded that she had care, custody and control of [T.S.] on the day of his demise, specifically in accord with the State's allegations, only related to its two theories raised in Count One and Count Two of the indictment.

There is no dispute that the State alleged that [T.S.'] death occurred by an [ACT] or [OMISSION].

### B. The Disputes Raised by the State's Brief Relevant to the State's Allegations.

The [writer] grossly misconstrues Day's argument relevant to Issue One. SB-56. In an attempt to further contradict the facts, the [writer] complains that Day's argument is a challenge to the indictment. That is simply not the case. While the State makes the unremarkable observation that Day "never challenged the indictment in her case," the [writer] conspicuously evades the issue of Day having structured her discussion relevant to the statutory elements raised in the indictment, and that the State failed to meet its burden of proof according to the clear language charged in the indictment and submitted to the jury.

The Court should also be concerned as to why the [writer] entirely ignores the precedential caselaw cited by Day supporting her argument based on the State's two theories in Count One. See

(8)

Appellant's Brief at 14, 18, 27-30; and see Appellant's Brief at 32, closing with how the State failed to prove Theory 1, Count One, and failed to prove Theory 2, Count One.

**C. The [Writer] Miscontrues Day's Legal Sufficiency of the Evidence Challenge as a Challenge to the Indictment.**

The language set out in the indictment provided that:

"... defendant ... did then and there intentionally and knowingly by act or omission cause the death ... of [T.S.] by: failing to properly supervise [T.S.] while [T.S.] was in the water without a lifejacket, or failing to seek adequate or timely medical care for [T.S.]." (Bracket Emphasis added). (I-CR-3, @ 6-7).

There is no question, that by tracking the language of the indictment, the State's allegations are a derivative of Tex.Pen.Code § 22.04(a)- Injury to a Child.

So, being that "injury to a child" may serve as an under-lying felony, to felony murder,[*] (such as the case here), and because the State specifically alleged that its [two] theories constituted an [act] and an [omission], Day did not object to the substance of the indictment because she held the State to its burden of proof relevant to these two theories.

In this case, the Grand Jury failed to specify in the indictment and the State failed to identify at trial, the offense

---

* See Rodriguez v. State,_____S.W.3d____ (Tex.Crim.App. 2014)(No. PD-1189-13). (6-18-14).

that constituted the statutory element of criminal activity relied upon by the State in order to meet its burden of proof.

The [writer] fails to recognize -- or simply evades -- the fact that it was strategy, in this case, not to require the State to specify the exact "criminal statutory activity," and simply chose to force the State to meet its burden of proof against the [two] theories.

With this strategy in mind, the [writer] is simply wrong in his misguided contention, and this Court is required to review Day's sufficiency of the evidence challenge based on an analogy of the indictment as drafted. See Deschenes v. State, 253 S.W.3d 374, 378 (Tex.App.--Amarillo 2008, pet.ref'd).

**D. The State's Evidence was Legally Insufficient to Support the Guilty Verdict as to the [Act] and [Omission] Theories.**

The [writer] is correct in his remarkable observation that when an indictment does not facially allege a complete offense, "the State may [attempt] to prove (and the defendant is deemed to be on notice) any [theory] of the offense that is consistent with the incomplete indictment, and the [controlling] penal provision examined together." SB at 66-67.

This is precisely Day's argument in her brief relevant to Issue One (and its two theories), is that the State failed to prove, beyond a reasonable doubt, that she caused [T.S.] to drown by "failing to [properly] supervise him while he was in the water without a lifejacket, or that she failed to seek adequate or timely medical care for him." Appellant's Brief at 18-32.

(10)

The appellate courts measure the sufficiency of the evidence against the [elements] of the offense as [defined] by a hypothetically correct jury charge. Deschenes v. State, 253 S.W.3d at 380.

## 1. A Hypothetically Correct Jury Charge

In fashioning the hypothetically correct jury charge, this Court is bound by the law "as authorized by the indictment." That is to say, Day's hypothetically correct jury charge simply quotes the language of the indictment, instructing the jury to find her guilty if it found that [T.S.'] death was caused by one of the two theories under Count One. III-CR-411.

This Court cannot substitute itself for the Grand Jury and rewrite the indictment under a statutorily defined murder charge relevant to the two theories. Nor can this Court search the statutes --state or federal-- to find an underlying felony theory to fit the State's weak circumstantial evidence or the jury's verdict.

Here, where the indictment and the jury charge merely parrot the State's two theories (clearly derived from § 22.04(a)'s language, but not expressed by the State) and because Day did not seek to compel the State to specify the specific criminal activity, this Court is [bound] by the language contained in the indictment while conducting its sufficiency analysis. See Fisher v. State, 887 S.W.2d 49, 57 (Tex.Crim.App. 1994).

So, the essential elements of the underlying theories for this felony murder prosecution --specifically tracking the clear language of the indictment-- being derived from the statutory

(11)

[language] from § 22.04(a) itself,--"Injury to a Child"-- under the hypothetically correct jury charge in this case is met if Day: (1) intentionally; (2) knowingly; (3) by; (4) [act]; (5) or omission; (6) caused the death of [T.S.]; (7) a child; (8) by; (9) failing to properly supervise [T.S.] while he was in the water without a lifejacket; OR (10) failing to seek adequate or timely medical care for [T.S.].

> 2. The State's Proof That Day Caused [T.S.'] Death by Failing to Properly Supervise him While [T.S.] was in the Water Without a Lifejacket was Grossly out Standard for Sufficiency Proof Under Jackson.

Here, the State's evidentiary proof tending to establish a connection between [T.S.'] death and her alleged failure to have been properly supervising him while he was in the water, amounted to no more than rank conjecture.

In support of a nexus between Day's failure to supervise [T.S.] and his death, the [writer] flat-out mistates the facts adduced at trial and supported by the record.

For example, there was absolutely no testimony from the State's key witness, Rene Ruiz, that Day "attempted to [coax] [T.S.] into the water." SB at 68. Nor was there [any] testimony indicating that "[T.S.] was already dead in the back seat of Day's car" when she parked next to, or actually a ways down from Ruiz. SB at 62. And finally, most grossly mistated was at SB-68 where the [writer] flat out mistates that Day drowned [T.S.] by holding him under the water.

Nothing more needs to be said here. The facts are that [T.S.] tragically drowned by accident. There was no proof by

(12)

the State on this score. Day respectfully relies on her initial argument in support of the fact issues raised in this Reply, and continues to hold that the evidence is legally insufficient to support the jury's verdict of capital murder under Theory 1, Count One. Appellant's Brief at 19-27.

3. The State's Proof That Day Caused [T.S.'] Death by Failing to Seek Adequate or Timely Medical care for [T.S.] is Legally Insufficient to Support the Jury's Verdict That Day Committed Capital Murder.

As to Theory 2 of Count One, Day respectfully stands by her argument set forth in her opening brief. Appellant's Brief at 27-32.

But since the [writer] is adamant that the jury could have concluded Day intentionally or knowingly caused the death of [T.S.], by [act] or [omission], a brief reply is necessary.

(a). [Act] and [Omission] Defined Under Statute and Caselaw Precedent.

The State conspicuously evades the fact that <u>Jefferson</u> <u>v. State</u>, 189 S.W.3d 305 (Tex.Crim.App. 2006), dispells the method of which the State underhandedly manipulated the use of these two nouns. (14-RR-9).

In <u>Jefferson</u>, the court concluded: "The first question we address, then, is whether the Legislature intended to make "act or omission" in Section 22.04(a) separate elements of the offense or underlying "brute facts [or means] that make up a particular element..." We believe it clear that the Legislature intended the latter that "act or omission" constitute the means

(13)

of committing the course of conduct element of injury to a child."
Id. at 312; see also Thorton v. State, 994 S.W.2d 845 (Tex.App.-
Fort Worth 1999, no pet.); Dusek v. State, 978 S.W.2d 129,
133 (Tex.App.-Austin 1999, pet.ref'd).

(b) Rodriguez v. State, (No. PD-1189-13) is Both
Distinguished and Indistinguishable in Day's
Case.

Forthright, the [writer] contends that Day's sufficiency
of the evidence challenge was an attack on the indictment, and
the issue here should have been preserved by an objection. See
SB at 66. That is not the case here, nor is it the issue for
review presented by Day.

The [writer] cited Rodriguez in his contention that Day
never objected to her indictment. While Rodriguez was faulted
for not objecting, the facts here can be distinguished as to the
preservation of the argument. How?

Because of the two theories alleged in Count One of the
indictment being committed as an [act] or [omission], and because
any [act] relevant to the charge required the act to be clearly
dangerous to human life, Day chose not to object and to hold
the State to its burden of proof. Appellant's Brief 19-22; see also
Tex.Pen.Code § 19.02(b)(3); Cf- SB at 55, 65-68 (holding to same
subject principle set forth in Day's arguments).

There was no evidence presented in Day's case that she
committed any affirmative [act]' in the tragic drowning death
of [T.S.]. Where Day allowed [T.S.] to remove his lifejacket,
and purportedly failed to [properly] supervise him, such actions

(14)

even collectively were [omissions]. The same principle applies to Theory 2 of Count One, and if Day failed to provide medical care (which she does not concede) then this act was also an omission. Rodriguez, id.

While the evidence under Theory 1 of Count One is clearly insufficient to support the jury's verdict, it is now necessary to turn to Theory 2 of Count One in a comparative analysis.

THEORY 2:

While denigrating Day's efforts, the [writer] deliberately side-tracks the obvious elements of which the State had to prove with respect to Theory 2, [adequate] or [timely] medical care. I-CR-3, 6-7; III-CR-411.

There is no dispute that Day did provide medical care for [T.S.]. Given this fact, the elements of proof that was alleged in the indictment turns on whether Day provided [adequate] or [timely] medical care.

As noted in the State's Brief, the [writer] refuses to acknowledge Day's sufficiently cited case precedent on this issue, and to where the State grossly failed to prove Theory 2 beyond a reasonable doubt. Appellant's Brief at 27-32.

[A]- Failure to Seek [Adequate] OR [Timely] Medical Care.

At first glance it appears the State's contention under Theory 2 was to show that, if [T.S.] was still alive after Day PULLED HIS LIFELESS BODY FROM THE WATER, THAT HER FAILURE TO TO "SEEK" (1) ADEQUATE, OR (2) TIMELY MEDICAL CARE, caused his death. But, the State's case must fall under two reasons.

(15)

First, in conducting an analysis under § 22.04()(1)(2)'s affirmative defense provisions, in accord with the case precedent cited in the Appellate brief, 27-30, the evidence was both legally and statutorily insufficient.

Secondly, assuming (and certainly not conceding) that [T.S.] was still alive after Day removed him from the water --as the [writer] now hypothyzes-- it cannot be disputed that Bay Area Hospital of Corpus Christi, Texas provided more than [adequate] medical care for [T.S.]. Facts are facts, and allegations are allegations, and the fact is the State did not prove, beyond a reasonable doubt that Day failed to [seek] "adequate" medical care for [T.S.].

It is crucial to point out that one of the State's disparate pieces of evidence on this score was Day's alleged failure to have performed CPR on [T.S.]. But, the record facts demonstrate otherwise. One of the difficulties Day experienced with her attempt at mouth-to-mouth on [T.S.] was that he had vomited after aspirating in the water, and it was difficult at best to perform adequate CPR with the vomit present in [T.S.'] mouth. See 7-RR-84; see also 7-RR-125-125, .Dr. Garcia noting: "Q: And the tape and the tube that we see on his face, is that the intubation that you described earlier in your resucitation effort on [T.S.]? A: Yes. Q: And, the material that is around that tape and on that pillow, would that be consistent with vomit induced by resucitation efforts? A: Yes, the tube was placed and sometimes you'll get some vomit coming around the tube but you're trying to protect the airway so you want to keep the-

(16)

- the vomit out of the actual lung because it will cause problems later."

Day also recognized the fact with the vomit present around [T.S.] before she pulled him out of the water. The lack of proper breathing equipment to have performed CPR (mouth-to-mouth) is obvious to any layman, or in this case, Day. This Court should recognize Day's situation relevant to not giving full mouth-to-mouth with the vomit present. Of course the State does not recognize the difficulty one would have by trying to ignore the vomit while giving mouth-to-mouth.

Now, Back to point: [Adequate] medical care.

## DEFINING [ADEQUATE]:

ADEQUATE: As much or as good as necessary for some requirement or purpose; sufficient, suitable, fit; barely sufficient or suitable.

Random House Webster's College Dictionary (2nd ed., 2000).

This Court must draw a line in this case. Here, where an overzealous prosecutor obtains an indictment on nouns such as seek,* adequate, or timely, then the State should be held to its own allegations based on these nouns alleged in the charging instrument, and must be held to proof only on what the defendant is put to notice of.

Once again, the State's proof on whether Day sought (seek) [adequate] medical care is legally insufficient, because no

---

* Defining [Seek]: to go in search of or quest of; to try to obtain; try to attempt; to ask for; request. Random House, supra (2nd ed. 2000).

(17)

matter how the chips may fall for the State in this case, it cannot be said that the "medical care" Day provided for [T.S.] ---i.e., emergency care at the Bay Area Hospital, was not -- [adequate].

## [B] - Failure to Seek [Timely] Medical Care for [T.S.].

As with the State's failure to prove Day did not provide [adequate] medical care for [T.S.], the proof that Day did not [timely] seek medical care is legally insufficient.

## DEFINING [TIMELY]:

[Timely]: Occurring at a suitable time. Random House, supra (2nd ed. 2000).

--------------

While there may have been some delay in getting [T.S.] to the hospital, the delay alleged by the State did not cause the death of [T.S.]. Indeed, the location of where the drowning occurred (at least 3-5 miles below Bob Hall Pier) contributed to any delay as to getting him [timely] medical care, but only to the extent of the remote location in Kleberg County, Texas.

Testimony was given that a drowning victim has a variation of time of survival as short as three minutes, up to six before irreversible complications occur. 7-RR-94.

Also, Dr. Fernandez testified that [T.S.] was only 4-foot tall and weighed only 36 pounds, and that [T.S.'] lung size would have placed him on the low end of the spectrum allowed for survival. 7-RR-85-117.

The State made a big issue about Day's failure to call

(18)

9-11. But, even had Day summoned emergency medical personnel to the location where [T.S.] drowned, he would have well exceeded the outside spectrum of time allowed for proper medical --as well as timely-- medical care.

Simple math allows that it would have taken medical help over fifteen minute, possibly more, to have arrived at the beach location in Kleberg County. Considering the distance from Bob Hall Pier (at minimum--3 miles), the fastest speed limit that Day could have driven --even to the Pier to have met emergency personnel would have been twenty miles per hour due to the sandy conditions. So, timely medical care was simply another way for the State to manipulate the facts to their advantage. No matter how the Court considers this case, Day decided that driving [T.S.] to the nearest hospital was the fastest way to get him adequate medical care. See 7-RR-134-135, Testimony of Dr. Garcia: "Q: Now, as far as where the hospital is located, you stated that you see a lot of drowning victims go there. Is that because that's the nearest hospital from the Island? A: Yes, if you're in an extreme situation where you don't have a heartbeat or you don't have ventilations or you're coughing up water and the emergency medical services feel like you need to be seen immediately then you would stop there. Q: At least for somebody-somebody who is in a panicky situation and wanting to go to the nearest hospital, the nearest E.R. from the Island, it would be the hospital where you were? A: Yes.".

Sadly, Day was faced with a situation that no parent, legal guardian, or Justice of the Court for that matter, would want

(19)

to be faced with. The situation for which Day [found] herself in could just have easily been a double-edged sword. Had Day decided to call 9-11 and simply wait on emergency personnel (instead of driving [T.S.] to the hospital), one can assurdly assume that the State would have used that side of the sword against her. No one can actually know what went through Day's mind on this tragic day. No one was there that can say how Day should have reacted or otherwise. Even the State admitted this during closing arguments:

"The last thing that I want to leave you with -- and I'm going to ask you to always remember what I am about to tell you. **No body in this jury box right here was out there that day. No body was there.** We know that because if you were you would have been a witness, and you're not, you're a juror." (14-RR-46). (Bold emphasis added).

There was no bad or good choice in this case. Day chose what she felt necessary in the best interest of [T.S.]. Due to the location the drowning occurred, neither choice did, or could have saved [T.S.]. The evidence is legally insufficient to support the jury's verdict that Day intentionally killed [T.S.] because she failed to timely seek medical care for him.

## REFORMATION OF THE JUDGMENT IN LIEU OF ACQUITTAL

This is the type of case where this Court should invoke its authority and reform the judgment if it is determined that Day is held blameworthy by any degree.

(20)

## A. Recklessness or Criminal Negligence?

Apparently the trial court concluded the State's evidence did not fully encompass the proof needed for a capital murder conviction, due in large by its inclusion of two lesser-included charges relevant to the capital murder allegation. The record show that the jury was charged with the elements of Manslaughter, (III-CR-412) and Criminal Negligent Homicide, (III-CR-413).

In Issue Six of Day's brief, she challenged the sufficiency of evidence as to the jury's rejection of the Criminal Negligence charge. Appellant's Brief at 51.

The trial court not only defined recklessness in the application paragraphs of the charge, but specifically charged the jury with the elements of [reckless]. (III-CR-406-408 and 412, 415); Cf State's closing arguments, 14-RR-39, 42-43.

Criminal prosecutions for tragic accidents, such as here, are inherently troubling. They are also rare. See e.g., <u>Williams v. State</u>, 235 S.W.3d 742, n. 81-82 (Tex.Crim.App. 2007).

Considering the elements of criminal negligence in Day's case, this Court is provided with exclusive facts relevant to the [act] or [omission] theories. Day sufficiently briefed the the distinguishing elements separating manslaughter from criminal negligence. Appellant's Brief at 23-29.

The troubling factor with the jury charge as to manslaughter and criminal negligence is that they are identical. This only confused the issues.

Addressing the distinctions between capital [felony] murder, (intent), manslaughter (recklessness), and criminal negligence

(21)

(awareness of and disregard of), Day points the Court to the case of Williams v. State, supra, (analyzing the distinctions between recklessness and criminal negligence).

It is important to note that in Count One of the indictment, the State did not make a direct allegation that Day drowned [T.S.]. Regardless, even trying to prove such at the trial, the State failed to prove Day intentionally caused [T.S.'] death. And, importantly, that was not what the State put Day on notice of. The State alleged that Day failed to properly supervise [T.S.] and or that she failed to seek adequate or timely medical care for [T.S.]. That is what Day was put on notice of by way of Count One and the two Theories.

Also important to consider, even where the trial court concluded the evidence produced at trial warranted a charge on manslaughter, that evidence was also legally insufficient that Day "recklessly caused the death of [T.S.]."

Finally, if Day's omissions that were alleged constituted a crime of any degree, it would certainly be within the elements of criminal negligence. Why?

Manslaughter (criminal recklessness) must not be confused with (or blended into) the elements of criminal negligence, a lesser culpable mental state. Simply by allowing [T.S.] to remove his lifevest (which is not a crime in Texas) and then not [properly] supervising him (if that were truly the case), is not the type of culpable conduct showing that her omission constituted an extreme risk of danger to human life.

(22)

The same principle determination applies to Theory 2 of Count One, failing to seek adequate or timely medical care. While Day's alleged omission as to Theory 2 demonstrate a degree of negligence, this degree of negligence cannot be reconciled with gross negligence because [T.S.] had already suffered his grave injury.

So, any lack of foresight or carelessness on behalf of Day's omissions relevant to a capital murder claim are seriously undermined in this case by the elements of criminal negligence. Again, why?

First, Day did not reasonably forsee that allowing [T.S.] to remove his lifejacket and to play in the water while she sat at the waters' edge watching him, does not by any statutory standard reach the level of intentional murder or manslaughter.

Finally, as demonstrated above, although the delay of seeking adequate or timely medical care for [T.S.] was minimal, it cannot be disputed, or shown beyond a reasonable doubt, that the medical care [T.S.] did receive was inadequate from a medical standpoint, and was certainly timely measured by the location of which the drowning occurred, and the amount of time it would have taken for emergency personnel to have arrived after being notified.

Again, if Day is to be held accountable by any means as to the tragic drowning death of her step-son, it must fall under the elements of criminal negligence. This was a far cry from a capital murder; it was certainly not manslaughter. This cause should be reversed and an order of acquittal entered, or in alternative, reform the judgment to criminal negligence.

(23)

**Argument in Reply to the [SB], Issue Two:**

Apparently out of desparation, the [writer] plucks <u>Acosta</u> v. State,* out of the air to support his 12-line argument and conclusion he urges upon the Court.

While he continues to denigrate and convolute Day's argument relevant to Issue Two, the [writer] accuses Day of taking a "piecemeal approach."

First, the [writer's] reliance on <u>Acosta</u> is misplaced. And, since the [writer] chooses this line of approach, it is fair play to demonstrate the State's continued misrepresentation of facts at trial, and certainly by the incorrect standard the [writer] now assumes.

Day's argument as to Dr. Fernandez's revised opinion was not submitted as a piecemeal approach. To the contrary, the facts demonstrate that Dr. Fernandez's improbable opinion -- or for better words -[lack] of a conclusive finding of the corpus delicti-- was premised not on medical sciences, but on extraneous facts that were entirely unrelated to [T.S.'] death, and was legally insufficient to prove capital murder beyond a reasonable doubt.

Day set forth her facts and supporting case precedent in <u>Batterbee v. State</u>, 537 S.W.2d 12 (Tex.Crim.App. 1976). <u>Batterbee</u> is still good law. The [writer] conspicuously evaded <u>Batterbee</u>, and failed to offer any contrary line of authority.

---

* – 429 S.W.3d 621, n. 47 (Tex.Crim.App. 2014).

(24)

Next, the [writer] misrepresents the facts as to Day's contentions against the State's egotistical, self-purported expert, Andrea Zaferes. SB at 69.

Day's argument in her brief in no way challenges Zaferes expertise. See Appellant's Brief at 34-39. Day simply stated the facts as they unfolded at her trial. Day made the appropriate record citations, contrary to the [writer's] misstatements.

In her brief, it was (and is) Day's arguments that the evidence is legally insufficient to support the jury's verdict as to capital murder. This argument is founded on sound precedent, not allusions such as with the State's case.

The State placed great emphasis on Zaferes testimony, and also the testimony of Dr. Fernandez. The State's overreach in this case is appalling. The weakness of the State's case is obvious. Dr. Fernandez's legally insufficient facts warranting his amended opinions based on Day's prior murder conviction cannot stand. The State graciously conceded this fact during a pretrial proceeding. See Appellant's Brief at 35-36; see also 7-RR-69, 71-75, & 103).

It was the sufficiency of the evidence that Day challenged relevant to the lack of a corpus delicti, and that Zaferes and Pena's side-line information to Dr. Fernandez, did not provide a proper nexus to establish the prior conviction has anything to do with [T.S.'] drowning.

Day respectfully asks this Court to review her argument set forth under Issue Two. The evidence in this case, in accord with <u>Batterbee</u>, is legally insufficient, and warrants reversal.

(25)

See Deschenes v. State, 253 S.W.3d 374, 381 (Tex.App.- Amarillo , 2008, no pet.) (proof that amounts to only a strong suspicion or mere probability of guilt is insufficient to sustain a conviction).

Dr. Fernandez's mere suspicion (as well as Zaferes's) that this case represented a homicide because of Day's prior murder conviction, does not provide reasonable proof that [T.S.'] death was a factor due to the other conviction. The fact remains, the cause of death was drowning, but the corpus delicti remains undetermined, and this Court should find the evidence legally insufficient and reverse this cause with an order for acquittal.

## Argument in Reply to [SB], Issues Three and Four:

Issues Three and Four are incorporated in the SB. Day will also incorporate her reply hereto.

ISSUE THREE: The evidence is legally insufficient to support the jury's verdict for Injury to a Child.

Although Counts Two and Three of the indictment were waived, as to punishment, the fact is that Day remains [convicted] of [both]---Counts. (III-CR-422-424-Judgment).

Day raised her argument as to Count Two in order to assist the Court in analyzing how the jury most likely used Theory 2 of Count One in finding Day guilty by [OMISSION.]

So, it was necessary to submit the brief argument as so noted in Day's brief. See Appellant's Brief at 38-39.

Day relied on (and argued) the same statutory principles

(26)

relevant to Count Two's omission elements as to Injury to a Child was legally insufficient.

Again, the [writer] completely ignored the affirmative defense statutorily applicable in an injury to a child case by omission. See Appellant's Brief at 28-relying on § 22.04's statutory affirmative defense. Id. at (1)(2)(A), holding:

(1)- It is an affirmative defense to prosecution under this section:

(2)- for a person charged with an act of omission ... that:

(A)- there is no evidence that, on the date prior to the offense charged, the defendant was aware of an incident of injury to the child ... and failed to report the incident.

==================

Day respectfully requests the Court to consider the logic of her argument relevant to "Omission Theory 2" of Count One in conjunction with the jury's verdict of guilt by "omission" in Count Two of the indictment.

Where the evidence is legally insufficient in Count Two under the affirmative defense provision, then the evidence is also legally insufficient to have supported the jury's verdict under Theory 2 of Count One, by omission.

As with Issue Three here, the State also cited Price v. State, 626 S.W.2d 833, 836 (Tex.App.-Corpus Christi, 1981, no pet.), as is reasoning to abort Issues Three and Four. But, the reliance on Price is also misplaced. Price dealt with a true abandonment of a count [prior] to the case going to trial. It has no applicability here where Count Two and Three were waived

(27)

for punishment only. The same applies to Issue Two as to _Price._

ISSUE FOUR: The evidence was legally insufficient to support the jury's verdict of guilt on Abandonment/Endangerment of a Child.

As to the jury's verdict with Count Two of the indictment the State also [waived] punishment only in Count Three.

Day sufficiently argued the legally insufficiency of the evidence as to the verdict in Count Three. See Appellant's Brief Issue Four. So, there is no need to submit additional argument here. The evidence as to Counts Three and Four were legally insufficient and this Court should reverse the [convictions] and enter an order of acquittal on both verdicts.

**Argument in Reply to the [SB], Issue Five:**

The evidence was legally insufficient as to venue.

The statutory disposition of venue at the time of the case here is governed by Tex.Code Crim.Pro. 13.18.

Forthright, while citing the appropriate standard and the language of Article 13.18, Day inadvertantly noted article 13.08 which is a technical misprint. See Appellant's Brief at 50, FN*, holding: "If venue is not specifically stated, the proper county for the prosecution of offenses is that which the offense was committed." Id. at 13.18, TCCP.

This statutory enforcement is noted by the State's closing argument noting:

(28)

"I want to talk to you briefly about paragraph 11. It's venue, okay, and the judge read that to you. **The location of where [T.S.] died doesn't matter. We know that the defendant was south of Bob Hall Pier.** (Bold and Bracket emphasis added). (14-RR-40).

B. The [writer's] reliance on Schmutz v. State, 440 S.W.3d 29 (Tex.Crim.App. 2014) violates the provisions of the Ex Post Facto Clauses of the United States and the Texas Constitutions.

Day has the absolute right to be free from the application of an Ex Post Facto violation. The [writer's] absolute reliance on Schmutz is not only misplaced, but is a direct violation of Article 1 §§ 9 & 10 of the United States Constitution, and Article 1 § 16 of the Texas Constitution.

Prior to Schmutz, the Court of Criminal Appeals' case of Black v. State, 645 S.W.2d 789 (Tex.Crim.App. 1983) controlled the standard of review when reviewing a venue challenge. Black held (and numerous appellate courts followed) that the State had the burden of proving venue beyond a reasonable doubt and the failure to do so was reversible error under the acquittal standard. Until Schmutz, the appellate courts were split. But the Thirteenth Court of Appeals stood firm in its standard of review prior to Schmutz. See Appellant's Brief at 45-50, and cases cited therein. Schmutz now sets a new standard that followed Day's date of the alleged incident, October 5, 2012.

Day contends the date of her allegation was governed under

(29)

Black, supra; Lemoine v. State, 85 S.W.3d 385 (Tex.App.-Corpus Christi 2002, reh.denied); Rosillo v. State, 953 S.W.2d 808, 811 (Tex.App.-Corpus Christi 1997, pet.ref'd); Cunningham v. State, 848 S.W.2d 891, 906 n.1 (Tex.App.-Corpus Christi 1993, pet.ref'd); Jones v. State, 979 S.W.2d 652 (Tex.Crim.App. 1998).

1. Caulder v. Bull, 3 U.S. 383 (1798).

An ex post facto law is one passed [after] the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed. The United States and Texas Constitutions both forbid such violations of law. Carmell v. Texas, 529 U.S. 513, 120 S.Ct. 1260 (2000); Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715 (1990); Chalin v. State, 645 S.W.2d 265 (Tex.Crim.App. 1983).

The Caulder Court established four specific categories in deciding whether a certain law violates the ex post facto clause:

> 1st)-Every law that makes an action done before the passing of the law, and which was innocent when done; and punishes such action.
>
> 2nd)-Every law that aggravates a crime, or makes it greater than it was, when committed.
>
> 3rd)-Every law that [changes the punishment] and inflicts a greater punishment than the law annexed to the crime [when committed].
>
> 4th)-Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense in order to convict the offender.

See 3 U.S. (3-Dall.), at 390.

==============================

(30)

The United States Supreme Court has repeatedly followed Caulder's 200 year-old exposition of the ex post facto clause, and was re-enforced in Carmell v. Texas, 529 U.S. at 522, 525 (2000).

2. The relevant Caulder category applicable here.

Day invokes the fourth Caulder category. The case of Schmutz as the [writer] has applied here, violates the ex post facto clause because it changes the relevant scope of review of the legal sufficiency of the evidence from [beyond a reasonable doubt], to the new review of preponderance of the evidence. Also, the case now requires a harm analysis, wherein under Black and its progeny, a venue error required an acquittal.

3. The required harm analysis under the preponderance of the evidence standard still requires reversal of this case and a remand for a new trial.

Venuse in this case was a major issue. The elements of the offense all accrued in Kleberg County, Texas. All purported expert testings conducted by Andrea Zaferes were not properly conducted in the area where [T.S.] drowned. There were major differences in the conditions of the currents and tide levels, depths of the water, and other factors (elements) that were not tested in the correct area.

Testimony from the State's key witness, Rene Ruiz, was based on his perceptions as viewed in Kleberg County, Texas, and the elements adduced from his testimony played a key part at Day's trial. This is equally true with respect to testimony from Scott Cross..

(31)

Perhaps most damning to the State's case here is the fact that not one Nueces County law enforcement officer actually visited the area where [T.S.] drowned.

Finally, immediately after [T.S.] drowned, authorities from Kleberg County looked into the case. Ironically, those authorities determined that no crime had been committed, and did not pursue the drowning accident any further. This Court must ask itself, why did the two Prosecutors in this case violate the venue statutes in order to make this case its priority.

4. A 44.2(b) Harm Analysis, although the improper standard, requires reversible error because the venue issue had a major effect on Day's substantial rights.

A review of the voir dire demonstrates that every juror had a substantial amount of knowledge before hand of the facts of this case, due in large to the thrust of the media coverage prior to Day's trial. Defense counsel filed a Motion for Change of Venue which was denied. Had Day known before hand that the [writer] would force a harm analysis on this venue issue, then Day would have briefed her issue in a different manner and used the change of venue denial to her advantage.

In light of this fact, if this Court concludes that a harm analysis must be conducted, then the Court should stay this proceeding and allow Day to brief the issue for a harm analysis based on the harm she suffered by the pretrial exposure.

However, under Black's proper standard of review, the evidence is legally insufficient and this Court should reverse and enter an order of acquittal.

(32)

**Argument in Reply to the [SB], Issue Six:**

    A. The Jury's Negative Finging on the Elements of
       Criminal Negligence is legally insufficient.

The State's reliance on Giesberg v. State, 984 S.W.2d 245 (Tex.Crim.App. 1998), is not only misplaced, but is undermined by Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989); see also Cleveland v. State, 177 S.W.3d 374, 385-86 (Tex.App.- Houston [1st Dist.] 2005, pet.ref'd).

Both the State and Defense argued to the jury on the elements of criminal negligence, making it both an issue and defense element of the case, as opposed to capital murder or manslaughter. See e.g. 14-RR-51-55, 80, 84-85.

The [writer] contends this Court has no jurisdiction to conduct a review of Day's argument, because, inter alia, defenses and affirmative defenses are found in Chapters Eight and Nine of the Penal Code. SB at 75.

But, as with the bulk of the [writer's] contentions, this one should be labled as a fable as well. Section 22.04(a) also provides an affirmative defense section otherwise not included under Chapters Eight and Nine. And, because the "criminal negli- gence" issue arose from Count One and Count Two of the indictment, there is nothing that prevents Day from raising a bonified claim challenging the legal sufficiency here. See Tello v. State, 180 S.W.3d 150, 158 (Tex.Crim.App. 2005); see also Montgomery v. State, 369 S.W.3d 188, 193 (Tex.Crim.App. 2012).

Under Article V § 6(a) of the Texas Constitution, [all]

(33)

Courts of Appeals shall have appellate jurisdiction ... conclusive on all questions of fact brought before them on appeal or error." Cleveland v. State, 177 S.W.3d at 386.

In civil cases, appellate courts have jurisdiction to review the evidence for legal sufficiency when an appellant challenges the legal sufficiency of the evidence to support the jury's [adverse] finding. Id. at 386; Sterner, supra at 690.

## Adopting Sterner's Standard of Review:

Consistent with reliance on civil law, the proper standard in criminal cases for review of legal sufficiency challenges to a jury's [negative finding] on an issue the defendant sought to prove, is the same standard applied in civil cases.

Under this standard Day must overcome two hurdles respective of this Court's analysis and review of her challenge.

First, this Court must examine the record for evidence that supports the finding of criminal negligence, while ignoring all evidence to the contrary. Howard v. State, 145 S.W.3d 327, 334 (Tex.App.-Fort Worth 2004, no pet.).

Secondly, if no evidence supports a negative finding, this Court then examines the [entire] record to determine whether it establishes the contrary proposition as a [matter-of-law]; Id.. (citing Sterner, 767 S.W.2d at 690).

So, as noted in Appellant's Brief at 53, as a matter of law the jury's negative finding on the issue of criminal negligence would compel the conclusion that there is evidence to support a criminal negligence conviction, and the jury's negative

(34)

finding was legally insufficient. The [writer's] argument with respect to this issue is without merit.

Because the evidence is legally insufficient to support the jury's negative finding of criminal negligence, this Court must, after conducting the proper standard of review, conclude this fact, and reverse Day's conviction and reform the judgment to reflect the criminal negligence finding, and set this cause for a new punishment hearing.

## Argument in Reply to the [SB], Issue Seven:

ISSUE SEVEN: The evidence was legally insufficient to prove Day was remorseless.

Here is another firm example of how the [writer] strays from the facts and flat out attempts to obscure the issues before this Court.

In his reply, the [writer] states: "As noted above, supra p.56, the State's burden of proof applies only to the elements of the offense. Tex.Penal Code § 2.01.:.. "As noted above, supra p.59, evidence of a defendant's lack of remorse may be considered by a jury as evidence that he intended to commit capital murder."

The [writer's] reply brief is rife with these types of double edged allusions. Day respectfully asks the Court to conduct the appropriate review as reflected in her Brief at 54-56.

Day's arguments sufficiencly provide proof that the evidence, as in the manner used by the State that she was remorseless, was legally insufficient.

(35)

**Argument in Reply to the [SB], Issue Eight:**

A. Prosecutorial Misconduct.

Forthright, as with his multiple misrepresentations, the [writer] accuses Day of complaining that the trial court erred in denying her motion to suppress. See SB at 77, n.22.

Although the trial court did in fact err by denying the motion to suppress, this was [not] Day's argument. Day merely sets out the issues relevant to the motion to suppress hearing and how the State used perjured testimony on that score.

Secondly, the [writer] contends that Day waived this error, (use of perjured testimony) because her lawyers failed to make an objection.

The [writer] ignores the fundamental error aspect urged by Day at Appellant's Brief-66.

Also, the [writer] conspicuously evades Day's claim of the prosecutor's misconduct related to the 165 objection that her lawyers were forced to make during the course of her trial. Appellant's Brief at 61.

There is nothing inappropriate about the structure of Day's arguments related to Issue Eight. The prosecutor's misconduct rose to the level of fundamental error and this Court should conduct a review under both 44.2(a), as well as in the interest of justice. Perryman v. State, 798 S.W.2d 326, 329, Appellant's Brief at 67.

The misconduct here warrants a reversal and a new trial.

(36)

**Argument in Reply to the [SB], Issue Nine:**

A. <u>Ineffective Assistance of Counsel Claims.</u>

While it is true in the majority of cases that the record on direct appeal is simply inadequate to reflect the failings of counsel, this is not that type of case.

As to Day's argument of counsel's failure to object to the State's knowing use of perjured testimony, the record is not only supportive of this facts, counsel had secured a hearing on the motion to suppress the very same evidence he allowed to come in without a further objection. Indeed, it appears from the pretrial hearing that the trial judge was not aware of the perjury, and counsel's failure at trial allowed the statement to come in.

Secondly, when an attorney sits by idle and allows a State prosecutor to make repeated comments on his client's failure to testify (clearly an objectionable error), and allows the State to thrust its case on his client's alleged lack of remorse, (also objectionable), then that lawyer has failed to protect his client's interests in a fundamentally fair trial. And, that's precisely what occurred in this case. The record supports Day's claims of ineffective assistance of counsel on this score. This Court is obliged to conduct a review of her claims.

Day's arguments in her Appellant Brief at 68-71 support her ineffective counsel claims and this Court should find her lawyers ineffective and remand this case for a new trial.

(37)

## Argument in Reply to the [SB], Issue Ten:

A. The Trial Court's Error in Admission of Evidence in Violation of Texas Rules of Evidence, 403, 404, and 405.

Contrary to the [writer's] misrepresentations, Day did, in fact, provide a clear argument for her contention made, and with appropriate citations to authorities and to the record. See Appellant's Brief at 72, citing (8-RR-159-passim, the exact record reference where the jail calls came in); see also Id., at 72, citing four controlling case precedents.

Day requests the Court to review her claims argued in Issue Ten.

## CONCLUSION AND PRAYER FOR RELIEF

Appellant Laura Day, pro se, respectfully prays that this Court reverse the decision of the trial court and remand with an order to enter a judgment of acquittal; or alternatively, reverse and remand for a new trial.

Respectfully submitted,

Laura Day, Appellant pro se
TDCJ-CID # 1863665/Crain Unit
1401 State School Rd.,
Gatesville, TX 76599

(38)

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that I have mailed a true and correct copy of the foregoing Reply Brief to counsel for the State by placing the same into the United States Mail, first-class postage prepaid, addressed to:

> Mr. Adolfo Aguilo, Jr.,
> Assistant District Attorney
> 105th District Court
> 901 Leopard, Room 206
> Corpus, Christi, Tx 78401

On June [ 9 ], 2015.

_____
Laura Day, Appellant pro se

```
LAURA DAY 1863665                          1 LBS        1 OF 1
(254) 295-0920                     SHP WT: 1 LBS
THE UPS STORE #5884                DATE: 08 JUN 2015
STE 103
3809 S GENERAL BRUCE DR
TEMPLE  TX 76502-1038

SHIP THIRTEENTH DISTRICT COURT OF APPEAL
TO: FL 10
    901 LEOPARD ST

CORPUS CHRISTI  TX 78401-3601
```




## TX 784 9-01

```
UPS GROUND

TRACKING #: 1Z 399 70E 03 0438 9360
```



```
BILLING: P/P
```

ISH 13.06N ZZP 456 63.5U 04/2015

...w law, shipper authorizes UPS to act as forwarding agent for export control and
...were exported from the US in accordance with the Export Administration
RRD R 0415